**Peter Gabor KALMAN, Plaintiff,**

v.

**The BERLYN CORPORATION, Defendant.**

**Civ. A. No. 82–0346–F.**

United States District Court, D. Massachusetts.

Feb. 22, 1989.

Francis D. Dibble, Jr., Bulkley, Richardson and Gelinas, Springfield, Mass., Rory J. Radding, Thomas F. Reddy, Jr., John E. Kidd, Paul J. Zegger, Pennie & Edmonds, New York City, Charles E. McKenney, for plaintiff.

George L. Greenfield, Wolf, Greenfield & Sacks, Boston, Mass., Leonard Santisi, Theodore Shiells, Curtis, Morris & Safford, New York City, for defendant.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

This action is before the Court on Plaintiff's Motion Under Rule 59(e) to Amend the Judgment and Memorandum in Support Thereof ("Motion"), Defendant's Opposition thereto ("Opposition"), and an extensive supporting cast of reply briefs and supplementary memoranda. Also before the Court are the parties' respective Motions for Expenses and Attorneys' Fees.

### II. BACKGROUND

#### A. The Litigation to Date

The plaintiff Peter Kalman ("Kalman") is the owner of United States Patent No. 3,471,017, entitled "Filtering Process and Apparatus." Kalman is the director and fifty percent shareholder of Process Developments Ltd. of London ("PDL"), which manufactures and sells plastic filter de-vices in accordance with the United States patent owned by Kalman. In 1982, the plaintiff brought this action against the defendant Berlyn Corporation ("Berlyn"), alleging that the defendant's manufacture and sale of two plastic filtration devices (the "Continuous Filter" ("CF") and "Continuous Screen Shifter" ("CSS")) unlawfully infringed on his patent.

This Court ordered that the trial be divided into two parts, a liability phase and a damages phase. Following a week-long trial in December 1986, the Court held that "[p]laintiff has carried his burden of demonstrating by a preponderance of the evidence that the defendant's CF and CSS devices infringe the Kalman patent." *Kalman v. The Berlyn Corporation*, No. 82–0346–F, slip op. at 38 (D.Mass. April 30, 1987) ("*Kalman I*") [1987 WL 10246].

A separate trial on the issue of damages was held in July 1988. The Court concluded that as a result of the patent infringement by Berlyn, Kalman suffered damages in the amount of $512,923 in lost profits for diverted sales, and $222,305 in lost profits for depressed pricing, for a total of $735,-228. *Kalman v. Berlyn Corporation*, No. 82–0346–F, slip op. at 19–21, [1988 WL 156126] (D.Mass. July 25, 1988) ("*Kalman II*"). The Court also awarded the plaintiff prejudgment interest on all lost profits, bringing Kalman's final judgment to $1,500,944.48. *Kalman II*, slip op. at 21–22; Judgment, *Kalman II*; Plaintiff's Calculation of Prejudgment Interest on Damage Award, *Kalman II*. Zealous readers who desire more detail are directed to those two opinions.

### III. RULE 59(e) MOTION TO AMEND THE JUDGMENT

#### A. Arguments of the Parties

In setting out its theory behind the award of damages, the Court wrote that [p]laintiff's damages are measured by the *decrease in his holdings* in PDL caused by lost sales. Moret, Tr. at 1491. Calnan, Tr. at 786–87. Because plaintiff is a 50% shareholder of PDL, the measure of his damages is one half of PDL's

net profit after taxes, the tax rate having been derived from PDL's corporate tax returns for the United Kingdom. Moret, Tr. at 1490–91; DX I–1 through 22.

*Kalman II,* slip op. at 19 (emphasis added).

Kalman urges this Court to reconsider its computation of the damages to be awarded him for two reasons, discussed separately in conjunction with defendant's responses.

In a strongly-worded opposition, Berlyn argues that the plaintiff has "completely failed to show the existence of any manifest error of law or fact, or to present anything even arguably constituting newly discovered evidence," and that accordingly, the plaintiff has no grounds for a Rule 59(e) motion. Response, at 2.

### 1. Alleged Incorrect Analysis of Kalman's Compensation

The plaintiff first argues that the Court was incorrect in determining the manner in which he would be compensated for the decrease in his holdings. Kalman states that by awarding him fifty percent of PDL's profits after taxes, the Court is implying that the value of his holdings would be increased through a post-corporate tax dividend of the lost profits. Motion, at 3. This is contrary to fact, the plaintiff says, because corporate records show that PDL has never declared such dividends. Instead, Kalman states that the trial record shows that his sole method of compensation was through pre-corporate tax salary and health benefits. Motion, at 5. By the plaintiff's reasoning, there is no connection between the fact that he is a fifty percent shareholder, and this Court's award of *post*-corporate tax money. Motion, at 3.

Berlyn strenuously disputes Kalman's challenge of the Court's calculation. As a starting point, Berlyn notes that experts testifying for both sides agreed that Kalman's proper measure of damages was the decrease in "his holdings in PDL." Response, at 3. Berlyn then argues that only "net," or after tax, profits increase the "worth" of PDL and the value of Kalman's holdings. Response, at 4. In any case, Berlyn suggests, it does not matter whether PDL distributed the lost profits as dividends or retained them at the corporate level; Kalman's entitlement as a fifty percent shareholder remains exactly the same. Response, at 9.

The defendant's argument is based in large part on the testimony of its economic expert Nelson A. Moret ("Moret"), who analyzed PDL's corporate history between 1977 and 1986, the period of alleged infringement. Moret suggested that it was PDL's practice not to declare dividends, but rather to retain post-corporate tax profits in the form of liquid capital at the corporate level because of the high personal tax rate in Britain during those years. Moret, Tr. 1550–51. Such remuneration as Kalman took was, Moret stated, in the form of salary, which would be paid by PDL prior to the calculation of each year's corporate tax. Response, at 5–7. Berlyn does not accept, however, the plaintiff's argument that the profits lost as a result of Berlyn's infringement would have been paid to the plaintiff in the form of pre-tax salary.

Moreover, the defendant states that at no time did Kalman or any of his witnesses suggest that the measure of his damages should be lost salary. It is inappropriate, the defendant states, to present a new theory of damages after judgment, particularly in those cases where the new theory is unsupported by the record. Response, at 10–11. Berlyn argues that by claiming that he would have received lost profits in the form of additional salary each year, Kalman is attempting to introduce a new theory of damages after judgment has been rendered. *Id.*

In a reply brief, Kalman contends that the practice of retaining large amounts of money at the corporate level was in anticipation of this lawsuit. "[H]ad there been no infringement," he argues, "the need for Process Developments, Ltd. to retain much of its income would have been absent, and plaintiff would have received much higher salary and pension benefits." Request for Leave to Reply and Plaintiffs [sic] Reply to Defendant's Response to Plaintiff's Motion under Rule 59(e) to Amend Judgment, at 8 ("Plaintiff's Reply"). Even if PDL might

have retained some capital at the corporate level, the plaintiff suggests that such doubts must be resolved against the infringer, *citing Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed.Cir.1987) ("When the amount of the damages is not ascertainable with precision, reasonable doubt is appropriately resolved against the infringer.").

Kalman concludes by saying that if the Court does not amend its judgment, he will be undercompensated in actual fact, resulting in a windfall for the defendant. Plaintiff's Reply, at 8–9.

### 2. Double Taxation

The plaintiff also argues that by reducing his award through the application of the British corporate tax rate, this Court is unfairly subjecting him to double taxation. Through the use of declarations and exhibits, Kalman proposes to show that the British Inland Revenue Service will treat his award as *corporate* income in the year in which it is received, and thus will subject it to the corporate tax rate again. Motion, at 5–7 and attachments; Supplemental Memorandum in Support of Plaintiff's Motion under Rule 59(e) to Amend the Judgment and Exhibit A ("Supplemental Memorandum"). As a result, Kalman says, this Court has failed to adequately compensate him, and has conferred an "unjust benefit" upon the plaintiff. Motion, at 7.

Berlyn presents little substantive opposition to Kalman's double taxation argument, relying instead on procedural objections. To begin, the defendant argues that the declarations and exhibits offered by Kalman fail to meet the definition of "newly discovered evidence" sufficient to form a basis for a Fed.R.Civ.P. 59(e) motion, since it is all material that Kalman should have known about at or before trial. Response, at 12. The defendant points out that one declaration contains comments made by James Calnan, the plaintiff's accounting expert, who testified for several days at trial and on rebuttal. Likewise, the defendant says that the declaration of Stanley Tuckman, PDL's accountant, contains material

that should have been known to the plaintiff before or during trial.

Lastly, the defendant argues that the letter solicited from Her Majesty's Inspector of Taxes regarding the taxation of Kalman's damages also fails to satisfy Rule 59(e) because the letter was not in existence at the time of trial. *See Strobl v. New York Mercantile Exchange*, 590 F.Supp. 875, 878 (S.D.N.Y.1984), *aff'd*, 768 F.2d 22 (2d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). Response, at 15–16. Berlyn concludes its remarks by challenging the quality of evidence offered by Kalman, suggesting that the letter is hearsay and is based on inaccurate assumptions. Response, at 16–17.

### 3. Arnold Declaration

A further source of discord is a declaration by Charles Arnold, a Solicitor of the Supreme Court of England, which is attached to the Plaintiff's Reply. Plaintiff's Reply and Attachment. Arnold's declaration sets forth four English cases which purport to show that inventions developed during the course of an employee's tenure with a company are the property of that company, and that proceeds from the invention go not to the inventor but to the company. Berlyn strenuously opposes the introduction of Arnold's declaration, stating that Kalman violated Local Rule 17(a)(4) by not filing the declaration with the original Rule 59(e) motion and by not then seeking leave to submit the declaration. Defendant's Memorandum in Opposition to Plaintiff's Request under Local Rule 17(a)(4) to Submit the Declaration of Charles Anthony Arnold, at 1–2 ("Defendant's Opposition"). Berlyn also reiterates its contention, *supra*, that none of the declarations submitted by Kalman in conjunction with the Rule 59(e) motion satisfy the definition of "newly discovered evidence" contemplated by the Rule. Defendant's Opposition, at 2–4. Lastly, the defendant states that the declaration violates Fed.R. Civ.P. 44.1, which requires that "a party who intends to raise an issue concerning the law of a foreign country shall give notice by pleading other reasonable written notice." Berlyn argues that it is unreason-

able for the plaintiff to submit such a declaration, involving complex issues of foreign law, without any notice. Defendant's Opposition, at 4–5.

Kalman claims that Berlyn's objections are unfounded. Plaintiff's Response to Defendant's Memorandum Opposing the Submission of the Arnold Declaration, at 1 ("Plaintiff's Response"). For instance, Kalman states that the Arnold declaration (although filed a month later) is really part of his Reply to the defendant's Response to the Rule 59(e) motion. Covering all bases, Kalman also requests leave in a footnote to submit the Arnold declaration to this Court's consideration. Plaintiff's Response, at 2 & n. 4.

The remainder of the Plaintiff's Response is devoted to a reiteration of the claim that the Court's award unjustly subjects the plaintiff to double taxation. Kalman states that in all "reasonable probability," he would have received fifty percent of PDL's lost profits in the form of salary and pension. Plaintiff's Response, at 5. The Court finds it significant, however, that in support of that allegation, Kalman cites only to post-trial memoranda. *Id.*

With respect to the Arnold declaration, Kalman states that it is within the discretion of this Court to consider it or not, and argues that because he is not seeking a new trial, the material submitted need not meet the requirements of "newly discovered evidence." Plaintiff's Response, at 6. Even if it were necessary, Kalman says, the material submitted does so because the tax effects on any award were unknown and unknowable until the Court's ruling on damages issued on July 25, 1988 (*Kalman II*). Plaintiff's Response, at 6, n. 7. Plaintiff also alleges that the defendant had ample notice of the foreign law issue in paragraph 8 of the Tuckman declaration (attached to the original Rule 59(e) motion), "and had ample opportunity to present its own position in its opposition to that motion." Plaintiff's Response, at 7–8.

### B. Applicable Standard

Federal Rule of Civil Procedure ("Rule") 59(e) states as follows:

**(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

As the Supreme Court has stated, the draftsmen of Rule 59(e) "had a clear and narrow aim[,] ... to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 450, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982) (*quoting* Notes of Advisory Committee on 1946 Amendment to Rules, 5 F.R.D. 433, 476 (1946)). The most common grounds for allowing a Rule 59(e) motion are "for manifest error of law or of fact, or for newly discovered evidence." *In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr.S.D.N.Y.1986).

The rule in this Circuit, as in others, is that "[a] Rule 59(e) motion is addressed to the discretion of the district court." *Earnhardt v. Commonwealth of Puerto Rico*, 744 F.2d 1, 3 (1st Cir.1984); *Robinson v. Watts Detective Agency*, 685 F.2d 729, 743 (1st Cir.1982), *cert. denied*, 459 U.S. 1105 & 1204, 103 S.Ct. 728 & 1191, 74 L.Ed.2d 953 (1983) (citations omitted). In order to prevail on a Rule 59(e) motion based on manifest error of law or fact, the moving party must make a showing of some substantial reason that the court is in error. *Robinson*, 685 F.2d at 743. If claiming newly discovered evidence, the movant must demonstrate that the evidence was in existence at the time of the trial, but that the moving party was excusably ignorant. *Id.* The district court may refuse to consider an issue when it is not raised "until after trial, verdict and entry of judgment." *Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 864 n. 4 (1st Cir.1987). "We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory." *Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

*Earnhardt* is especially relevant to the case at hand. In his proposed findings of fact, Earnhardt failed to request prejudgment interest and liquidated fringe benefits, and instead asked solely for an award in the amount of his breached employment contract, $850 per month. *Earnhardt*, 744 F.2d at 3. The First Circuit ruled that "[i]t cannot be said that either prejudgment interest or an award for lost fringe benefits must, as a matter of law, be part of the damages awarded in a Title VII case." *Id.* The determination of whether or not they should have been included in the award was wholly in the discretion of the Court and, in particular, "[t]he determination of the amount of damages is, absent legal error, a matter for the finder of fact." *Id.* "This is especially so when the request for such an award comes as an afterthought by the plaintiff." *Id.* As will be discussed in more detail below, the arguments of the Court of Appeals are very persuasive in this situation.

### C. Ruling on Plaintiff's Rule 59(e) Motion

#### 1. Kalman's Compensation by PDL

██ As an initial matter, the Court concludes that both sides did agree during the July trial that the correct measure of damages was the decrease in the value of Kalman's *holdings* in PDL. It then became this Court's task to determine exactly how to calculate that decrease.

Both parties advert to the testimony of Moret, the defendant's accounting expert, who stated that a review of PDL's tax returns showed that PDL historically did not declare dividends, but instead retained profits at the corporate level. Kalman claims that Moret's testimony is evidence of the fact that any excess profits would have been turned over to him in the form of pre-corporate tax salary, since it was PDL's practice not to declare dividends. Berlyn replies, and the Court agrees, that no evidence whatsoever was offered by Kalman at trial to prove that PDL would instead have paid Kalman the lost profits as salary. In fact, Kalman apparently ignores the testimony by Moret that it was

prudent for Kalman and his brother (the owner of the other fifty percent of PDL) to keep profits at the corporate level in light of the high individual tax rates in the United Kingdom during the relevant years.

Kalman's statement that profits were held at the corporate level solely because of pending litigation in the United States is disingenuous. Not only was the individual tax rate much higher than the corporate tax rate, but also, PDL's revenues vastly exceeded the amount needed to conduct any foreseeable litigation; moreover, legal costs were treated as a corporate expense prior to the calculation of each year's taxes and profit, illustrating no need on Kalman's part to hoard one year's profits in anticipation of the following year's legal expenses. *See* Motion, Exhibit A. Clearly, then, Kalman made a conscious choice during the relevant years to keep his profits at the corporate level rather than take them in the form of dividends *or* salary. Thus, the Court finds as a matter of fact that it is reasonable to assume that Kalman would have treated any additional profits earned during those years in a similar manner.

Even if that were not a reasonable assumption to make (and the Court believes it is), the tardiness of Kalman's argument deprives it of any force. As the *Earnhardt* court made clear, if there is to be any certainty in judgment, it is incumbent upon each party to insure that *all* arguments are laid before the Court *during* trial, and not afterwards through motion, declaration and exhibit. *See generally, Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 705 F.Supp. 698 (D.D.C.1989) ("Rule 59(e) motions are not vehicles for bringing before the court theories or arguments that were not advanced earlier."); *see also, Puleio v. Vose*, 830 F.2d 1197, 1203 (1st Cir.1987) ("The law ministers to the vigilant not to those who sleep upon perceptible rights.").

#### 2. Double Taxation

The plaintiff's argument that the Court's calculation of damages will result in double taxation also fails for a variety of reasons.

Even in light of the possibility that Her Majesty Queen Elizabeth II of England will extract U.K. corporate taxes from the plaintiff's award, this Court cannot say that it erred in either fact or law in calculating the plaintiff's award. As a matter of law, it is clear there is no error. Kalman is owner of the United States patents at issue, suing in his individual capacity (despite a last minute attempt to bring in PDL as a co-plaintiff. *See Kalman II*, at 2–6.). As the prevailing party in this lawsuit, Kalman is entitled in his individual capacity to any damages awarded by the Court under federal patent law. Judgment was entered accordingly. At no time was any suggestion made that United States statutory or case law requires this Court to consider foreign tax ramifications.

The plaintiff, however, seeks amendment of the Court's judgment based on the alleged fact that the damages awarded will not be treated in Britain as personal income, but instead as corporate income, and will be subject to taxation as such in the year in which it is received. Kalman argues that because this Court reduced the amount of his damages by the U.K. corporate tax rate during the calculation of the award, he will be doubly taxed and will not be made whole.

The Court recognizes that the plaintiff may be correct. However, this Court cannot be expected to take judicial notice of a foreign jurisdiction's interpretation of its revenue code. Kalman made no mention at trial of the possibility that the award would be treated as corporate income, despite at least two prior patent actions in the United States, and despite his employment of an accounting firm presumably more conversant with U.K. tax practices than this Court. The Court does not find the award manifestly unjust in light of plaintiff's own failure to adequately assess and present his case.

For the sake of completeness, this Court also rules that the supplemental materials proffered by the plaintiff cannot be considered because Kalman has failed to satisfy the "newly discovered evidence" requirement for a successful Rule 59(e) motion. Kalman argues that because he is not asking for a new trial, his declarations and exhibits need not meet the "newly discovered evidence" standard relied upon by Berlyn. This Court disagrees. The standards for granting a motion under Rule 59—manifest error or newly discovered evidence—are not the exclusive province of the "new trial" language contained in Rule 59(a). *See, e.g., In re Crozier Bros.,* 60 B.R. at 688; *National Resources Defense Council,* 705 F.Supp. 698 ("[T]he [Rule 59(e)] motion must rely on one of three major grounds: '(1) an intervening change in controlling law; (2) the availability of new evidence (not available previously); and (3) the need to correct clear error (of law) or prevent manifest injustice.' " (*Citing All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (1987)).).

By proffering English case law and agency interpretation of the Revenue Code, Kalman has satisfied one element of the "newly discovered" test, that the evidence be in existence at the time of trial. *In re Crozier Bros.,* 60 B.R. at 688.

However, Kalman has not satisfied the "due diligence" element. Given his prior efforts (and success) in defending his patent in this country, either the plaintiff or his accountants should have been aware of, or should have investigated, the potential tax treatment of damage awards to the plaintiff. This is particularly true in this case, since Kalman's accountants have been in regular correspondence with Her Majesty's Inland Revenue Service during this litigation regarding the amount of corporate funds expended on legal fees. Motion, Exhibit A.

In addition, as the defendant points out, Kalman and his experts were presented with the defendant's proposed damage calculation in March 1988, four months before the trial on damages. Defendant's Exhibit AU–1. Despite the fact that Berlyn's calculations clearly treated Kalman's award as a post-corporate tax increase in PDL's holdings and not as precorporate tax salary, Kalman failed to make any suggestion that the British government would also de-

duct corporate taxes. Kalman did question Moret on the possibility of double taxation, but did so only in the context of the double taxation which occurs when a shareholder pays tax on income from post-tax dividends declared by a company, a situation which Moret correctly stated is inherent in the corporation-shareholder relationship. The plaintiff's attorney never suggested or explored the possibility of double taxation at the corporate level. Moret, Tr. 1634–35. While the Court agrees that it has a duty to resolve evidentiary doubts against the defendant, *see Del Mar*, 836 F.2d at 1327, the Court also believes that such a duty only arises where there is conflict in the evidence presented by the parties at trial. Since that is not the case here, the Court concludes that its calculation of damages does not suffer from manifest error.

Accordingly, the plaintiff's Rule 59(e) motion is denied.

## IV. MOTIONS FOR ATTORNEYS' FEES

### A. *Plaintiff's Motion for Fees under Rule 37(c)*

#### 1. Arguments of the Parties

Kalman argues that throughout the current litigation and prior patent infringement cases litigated elsewhere, Berlyn has admitted that its product uses "sealing plugs" similar to those covered by the Kalman patent.[1] Plaintiff's Memorandum in Support of its Motion for Expenses and Attorney's Fees Pursuant to Fed.R.Civ.P., Rule 37(c), at 2–5. Kalman states that it sought an admission on the "sealing plug" issue prior to the liability phase of the trial, but that Berlyn denied all requests. *Id.* at 6–8. As a result, the plaintiff alleges that it was unnecessarily forced to prove the existence of "sealing plugs" in the defendant's machines during the course of a six-day trial. *Id.* at 9. Although the plaintiff recognizes that his motion for attorneys' fees under 35 U.S.C. § 285 was denied by this Court's July 25, 1988 ruling, *Kalman II* at 26, he argues that this

Court did not address his Rule 37(c) motion contained in various post-damage phase filings, and that an award of fees should be made.

Turning to the merits of the motion, Kalman asserts that none of the three substantive exceptions to Rule 37(e) prevent his recovery. First, Kalman states that the admission of the use of "sealing plugs" was of substantial importance to the litigation. In fact, Kalman argues that the "sealing plug" issue was the only major substantive issue remaining in the liability phase of the lawsuit. *Id.* at 11–12. Second, the plaintiff argues that Berlyn had no reasonable ground to believe that it could prevail on the "sealing plug" issue. Based on admissions in prior litigation and corporate literature, Kalman claims that the defendant should have realized that there was no chance that it would prevail. *Id.* at 13–17. Third, Kalman suggests that the plaintiff had no other good reason for denying the admission. *Id.* at 17.

Berlyn replies that this Court implicitly dealt with the Rule 37(c) motion when it rebuffed the plaintiff's request for fees under 35 U.S.C. § 285. Defendant's Response to Plaintiff's Motion under F.R. Civ.P. Rule 37(c), at 1–6. Specifically, Berlyn argues that when this Court ruled that Berlyn's defenses were "neither frivolous nor brought only for delay," the Court's determination was in effect a finding that the defendant had "reasonable grounds to believe that it might prevail" on the "sealing plug" issue, or that the defendant had "other good reason for the failure to admit." *Id.* at 5.

In support of its argument that it had "reasonable grounds" for not admitting the use of "sealing plugs," Berlyn points to this Court's disposition of Kalman's motion for summary judgment early in the litigation. *Id.* at 6–10. Berlyn argues that by denying Kalman's motion for summary judgment on the "sealing plug" issue, this Court clearly concluded under Rule 56(c) that a "genuine issue of material fact" existed. *See Kalman v. Berlyn Corp.*, 614

---

**1.** Under the Kalman patent, liquid plastic is cooled to form solid barriers to prevent leakage during an extrusion process. *See generally, Kalman I.*

F.Supp. 1327, 1330 (D.Mass.1985) (Freedman, J.). Berlyn states that it has never denied that plastic plays some role in preventing leakage; however, the defendant "in good faith believed that the term 'sealing plug' as used in the Kalman patent did not encompass what Berlyn's devices did." *Id.* at 8. Also, the defendant places reliance on the fact that this Court denied Kalman's motion for reconsideration on the "sealing plug" issue.

Kalman responds by arguing that a denial of attorneys' fees under 35 U.S.C. § 285 is in no way an automatic denial of a Rule 37(c) motion. Request for Leave to Reply, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion under Rule 37(c) and Opposition to Defendant's Rule 11 Motion, at 1–5. The plaintiff argues that 35 U.S.C. § 285 provides for attorneys' fees in "exceptional cases," generally those where the patent infringement is willful. *Id.* at 3. By contrast, Kalman says, Rule 37(c) is a discovery sanction, designed to penalize parties which have no reasonable grounds for refusing a particular admission. *Id.* In Kalman's view, the two statutes require distinct findings.

Kalman also disagrees with the defendant's reliance on this Court's refusal to issue summary judgment on the "sealing plug" issue. *Id.* at 5–9. Specifically, the plaintiff argues that the Court's ruling was directed only at the issue of collateral estoppel, and implied neither "merit or approval" of Berlyn's defenses on the "sealing plug" issue. *Id.* at 6. Kalman broadly asserts that because Berlyn took "vacillating positions" on the "sealing plug" issue, it had no reasonable grounds for believing that it might prevail on that particular issue. *Id.* at 9–11.

In a final sally, Berlyn stresses that Kalman has not succeeded in demonstrating that the Rule 37(c) motion can survive this Court's explicit finding that Berlyn did not " 'conduct the present lawsuit in bad faith or with frivolous defenses.' " Defendant's Request Pursuant to Local Rule 17(a)(4) for Leave to Submit Reply Memorandum and Reply Memorandum in Further Support of Defendant's Motion under Fed.R.Civ.Pro.

Rule 11, at 1–3, *quoting Kalman II*, at 26.

**2. Applicable Standard and Ruling**

Rule 37 states in relevant part:

**(c) Expenses on Failure to Admit.** If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

There being a dearth of relevant case law in this jurisdiction, the Court turns to other districts for guidance in deciding plaintiff's Rule 37(c) motion.

Kalman directs the Court's attention to two cases involving the imposition of Rule 37(c) sanctions. In both instances, the appellate court determined that sanctions were an appropriate response to a party's failure to admit. *Chemical Engineering Corp. v. Essef Industries*, 795 F.2d 1565, 1574–75 (Fed.Cir.1986); *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 252–53 (6th Cir.1979). The facts as presented in *Chemical Engineering* are, in the plaintiff's view, analogous to the present case. Chemical Engineering ("CE") was asked by Essef Industries to admit to the fact that Essef's devices did not perform one of the steps required by the patent upon which CE claimed Essef's devices infringed. Despite knowledge of its own test results supporting Essef's position, CE refused to agree to the admission in part because to do so would be to concede to the absence of literal infringement by Essef. *Chemical*

*Engineering,* 795 F.2d at 1575. The Federal Circuit held that the district court was correct in imposing Rule 37(c) sanctions in light of CE's duty to admit the truth even in circumstances where there was a legal dispute. *Id.* Based on the record before it, the Court of Appeals held that "CE's refusal to admit cannot be justified in fact or law." *Id.* In this case, however, the court found (and still believes) that there was a legitimate factual dispute at the start of trial. As a result, *Chemical Engineering* does not control.

Kalman relies on *Campbell* for support of the argument that 35 U.S.C. § 285 and Rule 37(c) require separate findings for the award of attorneys' fees. *See Campbell,* 601 F.2d at 252–53. However, while the Sixth Circuit did discuss section 285 and Rule 37(c) separately, the case as a whole does not support Kalman's position. As the plaintiff should recognize, the same underlying issue—Campbell's failure to admit to matters proved to be within his own personal knowledge—formed the basis of *both* the section 285 award and the Rule 37(c) award. Moreover, the Sixth Circuit's discussion of the section 285 motion is conducted in large part with language drawn from Rule 37(c). *Id.* at 252. While this Court in no way intimates that the criteria for the two awards is identical, it does feel that there is considerable similarity.

This Court's interpretation is bolstered by the language found in *Williams v. State Farm Mutual Automobile Insurance Co.,* 737 F.2d 741 (8th Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 910, 83 L.Ed.2d 923, *rehearing denied,* 470 U.S. 1039, 105 S.Ct. 1414, 84 L.Ed.2d 800 (1985). During the course of a personal injury suit, the defendant refused to admit to a state of legally defined intoxification, a matter subsequently proven at trial. In denying Williams' motion for Rule 37(c) fees, the district court specifically rejected the claim that the failure to admit was in bad faith. *Id.* at 746. In reaching that conclusion, the Eighth Circuit wrote that "the district necessarily must have found that [the defendant] 'had reasonable grounds to believe that he might prevail on the matter, or ... [that] there was other good reasons for

failure to admit.' " *Id., quoting* Fed.R. Civ.P. 37(c)(3) & (4).

■ As an initial matter, then, this Court finds that while the defendant's description and interpretation of its use of cooled plastic did vary over the course of the five-year litigation, it did so within the boundaries of the defendant's basic litigatory position, i.e., that the Berlyn CF and CSS machines *did not* use sealing plugs of solidified plastic, but instead relied primarily on closely fitting metal parts augmented by very thin sheets of semi-solid plastic. Of course, this Court eventually found that those sheets of plastic did constitute "sealing plugs" under the Kalman patent. *Kalman II,* at 36. However, Berlyn had reasonable grounds for refusing admission on this admittedly crucial issue.

■ More to the point, this Court concludes that its finding on attorneys' fees under section 285 adequately answers the plaintiff's motion under Rule 37(c). By writing as it did that "the positions espoused by the defendant were neither frivolous nor brought only for delay," this Court implicitly ruled that Berlyn had reasonable grounds for contesting the "sealing plug" issue.

Accordingly, Kalman's motion for attorneys' fees under Rule 37(c) is denied.

### B. *Defendant's Motion for Fees under Rule 11*

#### 1. Arguments of the Parties

■ Berlyn presses this Court to award it the costs and attorneys' fees associated with responding to Kalman's motion for fees under Rule 37(c), arguing that the plaintiff's motion was made "without any basis solely for improper purposes of harassment and to needlessly increase the costs of this litigation, since it is obviously foreclosed by express findings in [the] Court's July 25, 1988 Memorandum and Order and August 11, 1988 entry of Judgment." Defendant's Motion under Fed.R. Civ.Pro. Rule 11, at 1–2.

Kalman replies that his motion under Rule 37(c) was "solidly grounded in both

law and fact," and argues that the motion was filed when it appeared "that this Court's July 25, 1988 decision did not ... address this separate basis for recovery of such fees and expenses, implicitly or otherwise." Request for Leave to Reply, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion under Rule 37(c) and Opposition to Defendant's Rule 11 Motion, at 11–12.

### 2. Applicable Standard

Fed.R.Civ.P. 11 states in relevant part: The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

This Circuit has adopted the "objective test" of "reasonable inquiry" espoused in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985), *cert. denied*, — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 604–05 (1st Cir.1988). Under the "objective test" standard, a district court *shall* impose sanctions

> against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway*, 762 F.2d at 253–54 (emphasis in the original).

Although this Court found relatively little support for Kalman's Rule 37(c) motion, the grounds for pursuing the motion were not so tenuous as to merit sanctions against his attorneys. The plaintiff's attor-

neys were well within their professional rights to pursue an issue which on its face was not resolved by this Court. In addition, because the language used by the Court in disposing of the section 285 attorneys' fee claim does not precisely mirror that of Rule 37(c), even a reasonable inquiry into relevant case law would not dispositively show that the Court had in fact meant to dispose of the Rule 37(c) motion at the same time. This opinion makes it clear that the Court did intend to do so, but hindsight is an inadequate basis for Rule 11 sanctions. In addition, the Court finds that the plaintiff's Rule 37(c) motion was not filed for any other improper purpose.

The defendant's motion for attorneys' fees and costs under Rule 11 is hereby denied.

## V. CONCLUSION

For the above-stated reasons, the following rulings are made:

1. Plaintiff's Rule 59(e) motion to alter or amend the judgment is DENIED.

2. Plaintiff's Rule 37(c) motion for attorneys' fees and costs is DENIED.

3. Defendant's Rule 11 motion for attorneys' fees and costs is DENIED.

It is So Ordered.