Ellen BROWN and Mary Smith, et al.

v.

Donna E. SHALALA, Secretary Health and Human Services.

No. C–92–184–L.

United States District Court,
D. New Hampshire.

July 21, 1993.

Order Denying Motion to Alter or Amend Judgment Sept. 20, 1993.

**406**

Maria Dalterio, Deborah J. Schachter, N.H. Legal Assistance, Manchester, NH, for plaintiffs.

Gretchen Leah Witt, Elaine Marzetta Lacy, Jeffrey S. Cahill, U.S. Attorney's Office, Concord, NH, for defendant.

## ORDER

LOUGHLIN, Senior District Judge.

On May 7, 1993 the defendant filed a motion for summary judgment. The plaintiff on June 7, 1993 filed a cross-motion for summary judgment.

The facts in this case are for the most part uncontested. Involved is a challenge to 45 C.F.R. § 233.20(a)(3)(i)(B)(2). This federal regulation provides that, for purposes of eligibility for benefits under the Aid to Families with Dependent Children ("AFDC") program, equity in an automobile in excess of $1,500.00 must be counted in determining whether the applicant exceeds the $1,000.00 limit on assets that one may have and qualify for benefits. The AFDC program is actually administered by the New Hampshire Department of Health and Human Services.

The plaintiffs applied to the state agency for AFDC benefits, but were denied benefits because the equity value in their automobiles exceeded the $1,500.00 limit imposed by the federal regulation.

The plaintiffs seek to enjoin the defendant from imposing any vehicle equity limit in New Hampshire which results in the denial or termination of AFDC to plaintiff class members, in the absence of a new, duly promulgated and reasonable regulation which is adopted based on consideration and analysis of the following:

1.   the effects of inflation upon the cost of reliable vehicles;

2.   the need for reliable transportation to further goals of aiding welfare recipients to obtain employment and training, and achieve self-sufficiency;

3.   regional factors, including New Hampshire's relative lack of public transportation, and the need for rural residents to travel significant distances for medical care and other basic needs; and,

4.   such other criteria as may be necessary to evaluate the actual value of safe, reliable, mechanically sound vehicles which can be maintained without constant repair costs or undue frequency of breakdown.

The plaintiffs further contend that the $1,500.00 AFDC vehicle equity limit is unreasonably low, and thus inadequate to enable poor families to retain a safe, reliable vehicle necessary for transportation to school, work, job training, medical care and other essential services.

The defendant counters plaintiffs' argument by stating that the Secretary was acting at the express direction of Congress, was faced with the problem of scarce resources; further that Congress had reduced the AFDC resource limit from $2,000.00 to $1,000.00 attempting to ensure that the AFDC program benefit only the truly needy.

## BACKGROUND

Congress established the AFDC program as Title IV of the Social Security Act of 1935, Pub.Law 74–271, Title IV, 49 Stat. 627 (1935), 42 U.S.C. §§ 601–627 (1983 and Supp. 1991) for the purposes of "encouraging the care of dependent children in their own homes or in the homes of relatives ..." 42 U.S.C. § 601 (1983).

On September 21, 1981, the Secretary published an interim regulation setting the maximum automobile exemption at $1,500.00. See 46 Fed.Reg. 46750, 46755 (1981). The Secretary chose the $1,500.00 figure as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. *Id.* Data from that survey showed that 96 percent of all food stamp recipients who own cars have equity value in them of $1,500.00 or less. *Id.* The Secretary went on to state that the food stamp population tended to be more affluent on the average than AFDC recipients thus it appeared to be reasonable and supportable. *Id.*

Plaintiffs claim that the Secretary received numerous derogatory comments opposing the $1,500.00 limit as being too low and reliance on the food stamp data was inept; further that the Secretary should have considered what value would be appropriate to enable recipients to retain safe, reliable vehicles. Plaintiffs also argue that the 1981 promulgation based on 1979 food stamp figures fails to take into consideration inflation.

### ADMINISTRATIVE RECORD

■ This Court has the power to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Assoc. v. State Farm Mutual Insurance Co.*, 463 U.S. 29, 41, 103 S.Ct. 2856, 2865–66, 77 L.Ed.2d 443 (1983). An agency regulation will be deemed arbitrary and capricious if it relied upon factors Congress intended it not to consider, entirely failed to consider an important aspect of the problem, offered an explanation contrary to the evidence before it or was implausible. *Id.* at 43, 103 S.Ct. at 2866–67.

■ This court is confined, absent unique circumstances, to a review of the administrative record, and may not take a *de novo* review of the facts. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971). The court may not substitute its judgment for that of the agency. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

This court's review must include an assessment of "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment". *Motor Vehicle Mfrs. Assoc.*, 463 U.S. at 43, 103 S.Ct. at 2866–67 (citations omitted).

■ The court may not substitute its judgment for that of the agency or "serve as a rubber stamp for thoughtless agency action". *Central & Southern Motor Freight Tariff Assoc. v. Interstate Commerce Com.*, 582 F.2d 113, 116 (1st Cir.1978) (citation omitted).

"Where the empowering provision of a statute states simply that the agency may 'make ... such rules and regulations as may be necessary to carry out the provisions of this Act,' ... the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of enabling legislation'." *Mourning v. Family Publications Service Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660–61, 36 L.Ed.2d 318 (1973).

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43,

104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ Was the Secretary's Adoption of the $1,500.00 Automobile Equity Limit Unreasonable, Arbitrary And Capricious Or Abuse of Discretion?

The court has read the deposition of Paul L. Bordes who works in the Administration for Children and Families in Washington, D.C. His testimony was that the policy makers had no idea what would be a fair level to establish for the $1,500.00 AFDC vehicle asset rule. He provided information and developed the regulation. About 80% of AFDC recipients receive food stamps so there is an overlap. This was not contained in the 1981 study. Presently the figure for AFDC recipients is up to 85% as an overlap.

There has been a significant rise in the consumer price index from 71.5 in May, 1979 to 135.6 in May, 1991 due to inflation.

In response to a question, he did not know why the Secretary would allow for inflation and raise the vehicle asset limit in the SSI program, but not adjust for inflation in the AFDC program. He candidly admits that they were not dealing with what would transpire ten years from 1981.

People generally do not know what the equity value in their car is. He was in a data support sort of a role. Bordes' deposition was taken on July 17, 1991. He was deposed in the case of *Falin v. Sullivan*, 776 F.Supp 1097 (E.D.Va.1991).

The court in Falin concluded that the Secretary had not arbitrarily reached the $1,500.00 figure and granted the defendant's motion for summary judgment, denying plaintiff's motion for summary judgment.

The Falin court, while noting, did not follow the reasoning in *Maine Assoc. of Interdependent Neighborhoods v. Petit*, 659 F.Supp. 1309 (D.Me.1987) (Failure to count effects of inflation on twelve year-old data was arbitrary and capricious). The *Falin* court followed the Fourth Circuit which rejected the same argument in *Garnett v. Sullivan*, 905 F.2d 778 (4th Cir.1990). In that decision, the Fourth Circuit held that nothing requires the Secretary of Health and Human Services to adjust Social Security Supplemental Security Income ("SSI") to market conditions. *Garnett* at 782–83.

This court believes the reasoning of Judge Carter in *Maine Assoc. of Interdependent Neighborhoods* more persuasive with all due deference to the Fourth Circuit. Judge Carter concluded that the Secretary's failure to take into account inflation in a Medicaid context was "arbitrary, capricious and an abuse of discretion". *Petit* at 1323.

In this case the data used went back fourteen years and inflation was not even considered. The purchasing power of the dollar has been diminished to a great degree since 1979. The court is aware of the desirability today in these difficult economic times to cut back on unnecessary spending with our trillions of dollars of national indebtedness, the strong efforts to reduce the tax burden on the general public, restraint in public spending and watchdogging and exscinding those who take unfair advantage of general welfare benefits. This is countered by not allowing worthy needy recipients of our national largesse (even though the pantry may be temporarily near the bottom) from being summarily deprived of life's bare necessities and human dignity. Many of the recipients are one-parent families attempting to remove themselves and their families from the dole by being employed at jobs where motor vehicles are not a luxury, but an absolute necessity. To use a fourteen-year old standard as a criteria of the equity in a motor vehicle in 1979 is an anachronism considering the purchasing power of a dollar today.

The position of the defendant could be self defeating in certain cases. The arbitrary use of $1,500.00 as an equity figure promulgated fourteen years ago is unrealistic. Used today, it can result in a AFDC recipient losing his or her job by not allowing the recipient the availability of a safe operative motor vehicle in lieu of a schlock motor vehicle. The end result would be for the government or other relief agencies making up the difference in lost income. It destroys initiative of those who are endeavoring to get off of the public dole and exacerbates the personal degradation of many who are reluctantly on relief only as a last resort.

Many commentators have taken the defendant to task with regard to the vehicle equity limit. There has been a plethora of comments. This court will not allude to all of them, but one which is apposite and noteworthy.

The Idaho Department of Health and Welfare stated:

> Our only comment on evaluation of resources is that the maximum car equity value is set too low. Car prices have increased. Increasing (sic) average equity value, and clients who have cars they can depend upon for transportation rather than low-value "clunkers" are more encouraged to seek and continue work.

The affidavit of Clifford Bardsley dated May 3, 1993 is the quietus. Mr. Bardsley has a myriad of medical complaints, additionally he suffers from severe depression because of an inability to support his family. Mr. Bardsley is in a Catch 22 situation.

In December 1992 the insurance company which insured his truck loan under a credit disability policy determined that he was totally disabled and paid off the balance of the loan on his 1989 Dodge truck.

On February 26, 1993 he was notified that he and his family were no longer eligible for monthly AFDC payments because the equity in the truck exceeded the $1,500.00 limit.

The Bardsleys have a Hobson's choice—get rid of the truck and use their 12 year old defective and unsafe car. Without adequate reliable transportation the Bardsleys are marooned in a sea of bureaucratic red tape.

Enough is enough. After a careful perscrutation of the arguments of both parties the court finds that the $1,500.00 equity limit is arbitrary, capricious and ingravescent with the passage of time. Defendant's Motion for Summary Judgment is denied. Plaintiff's Motion for Summary Judgment is granted.

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

Before the court is the Defendant's Motion to Alter or Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons given below, defendant's motion is denied.

### Background

On April 14, 1992, the plaintiffs filed suit against the Secretary of Health and Human Resources, challenging 45 C.F.R. § 233.20(a)(3)(i)(B)(2). This regulation provides that applicants under the Aid to Families with Dependent Children ("AFDC") program, may be denied benefits on the grounds that the equity in their automobile exceeds $1500.00. The plaintiffs had been denied AFDC benefits pursuant to this regulation.

The plaintiffs brought a class action suit on behalf of all applicants in the state of New Hampshire who had been denied AFDC benefits pursuant to 45 C.F.R. § 233.20(a)(3)(i)(B)(2). The plaintiffs sought to enjoin the application of the regulation and in the absence of a newly promulgated regulation, requested the consideration of various guidelines in determining the eligibility of AFDC applications. The plaintiffs also requested notice of relief to class members.

On May 7, 1993, the defendant filed a motion for summary judgment to which the plaintiff responded with a cross motion on June 7, 1993. On July 21, 1993, this court granted the plaintiffs' motion for summary judgment finding that the vehicle equity limit was "arbitrary, capricious and ingravescent." *Brown, et al. v. Secretary, Health and Human Services,* 868 F.Supp. 405 (D.N.H.1993) (order granting motion for summary judgment).

### Discussion

It is well settled in the First Circuit that the decision to grant or deny a Rule 59 motion rests soundly within the discretion of the district court. *see e.g. Robinson v. Watts Detective Agency,* 685 F.2d 729, 743 (1st Cir. 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436; *Earnhardt v. Commonwealth of Puerto Rico,* 744 F.2d 1, 3 (1st Cir.1984); *Kalman v. Berlyn Corp.,* 706 F.Supp. 970, 974 (D.Mass.1989). The court has substantial discretion in determining whether to reconsider a final judgment. *Kalman* 706 F.Supp. at 974 (quoting *Appeal of Sun Pipe Line Co.,* 831 F.2d 22, 25 (1st

Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988)).

A motion to alter or amend a judgment pursuant to Rule 59(e) must rest on one of three grounds: "(1) an intervening change of controlling law; (2) the availability of new evidence (not available previously); and (3) the need to correct clear error (of law) or prevent manifest injustice." *Kalman v. Berlyn Corp.,* 706 F.Supp. 970, 976 (D.Mass. 1989) (quoting *All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (D.Hawaii 1987). The defendant has failed to satisfy any of these standards.

The defendant argues three basis on which the court should amend the judgment. First, the defendant argues that the requirement that the defendant provide the class with notice of the decision is unduly burdensome and expensive. Second, the defendant argues that the finding that the automobile equity regulation is arbitrary and capricious implies retroactive relief barred by the Eleventh Amendment. Finally, the defendant argues that the guidelines which the court has ordered the defendant to consider in evaluating AFDC applications (in the absence of a new regulation), are uniquely tailored to New Hampshire and thus not applicable to a national standard.

1. The Requirement of Notice Relief

It is clear that the district court has wide discretion in determining whether to provide notice to class members. In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court held that notice relief is "properly viewed as ancillary to the prospective relief already ordered by the court." *Quern* 440 U.S. at 349, 99 S.Ct. at 1149. The court noted that because the class had been certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the class members had never received notice of the complaint. Nevertheless, the court held that Rule 23(d)(2) permitted the court to require appropriate notice to insure

protection of the class members. *Quern* 440 U.S. at 335, n. 3, 99 S.Ct. at 1142 n. 3.

The defendant relies on the case of *We Who Care, Inc. v. Sullivan,* 756 F.Supp. 42, 47 (D.Me.1991), in which the court also held the automobile equity regulation to be invalid yet denied notice relief on the grounds that it would result in an excessive administrative burden. The court noted that while *Quern* provided the court with the discretion to grant or deny the relief requested, the defendant had met the burden of persuasion regarding the excessive administrative burden. The defendant in this case has not.

The defendant argues that the effort and expense of sending notice to all AFDC applicants denied benefits as a result of the automobile equity regulation may prove to be excessive. The defendant maintains that only the New Hampshire Department of Health and Human Services, as administrator of the AFDC program, would hold the information necessary to provide notice to the class and since the State is not a party to this action it may not be ordered to provide the information to the defendant.

The defendant's argument is unpersuasive in that it fails to provide any specific data to suggest that requesting the information from the State to provide notice to the class would be unduly cumbersome or expensive. The defendant merely suggests that the process "may well be excessive." Defendant's Motion to Alter or Amend Judgment at 3. In fact, the court record contains a copy of a letter from Peter Bradley, an administrator at the New Hampshire Department of Health and Human Services, in which he states that a total of 28 applications had been denied during 1992 due to an excess of equity or other resources.[1] See Plaintiff's Motion for Class Certification, Exhibit 1. Since the Plaintiff class consists of only those applicants denied AFDC benefits within the past 4 years, the class should consist of approximately 112 members.

---

1. The study conducted to determine the number of applications denied is divided into two subgroups. The first group consisted of 20 applications denied for an excess of equity and other resources while the second group contained 8 applicants which were rejected solely on the basis of excess automobile equity. Since the automobile equity regulation could potentially have been the cause of all 28 applications, the members of both subgroups would be members of the plaintiff class.

The class would also contain those applicants who withdrew applications for AFDC benefits as a result of the regulation. Again, the defendant fails to present any evidence concerning the size of the class. However, in the event that the size of the class is indeterminable for lack of information, as the defendant suggests, the remaining members who may have either withdrawn or failed to submit an application due to the regulation, may be reached by the posting of a notice in the New Hampshire Department of Health and Human Services explaining that the automobile equity regulation is no longer enforceable.

### 2. Eleventh Amendment Limits on Scope of Relief

Defendant contends that the order requiring notice relief to the plaintiffs is retroactive in nature and thus violates the Eleventh Amendment. The defendant insists that notification to class members of their right to reapply for AFDC benefits constitutes retroactive relief of the nature barred in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The defendant's arguments mischaracterizes the relief ordered by this court.

In *Edelman*, the Supreme Court held that private parties were barred by the Eleventh Amendment from seeking retroactive monetary relief payable from the State treasury. However, in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the court distinguished between the type of relief barred by *Edelman* and the type sought in *Quern*. In *Edelman*, the plaintiff sought monetary relief from the state to compensate for applications to a jointly funded state and federal program which had been processed according to time limits which the court later found to violate due process. Here, the plaintiff was clearly seeking retroactive payments from the state treasury. However, in *Quern*, the plaintiffs merely sought notice relief designed to apprise the plaintiff class members of their right to pursue past welfare benefits of which they had been denied. The court reasoned that this type of notice relief merely informed class members of the identical information they would have gathered had they been present in court while the decision to pursue administrative relief was left to the discretion of the individual class members. Further, the decision to award retroactive benefits would be left to the State. The court held that this type of relief was not retroactive in nature, but ancillary to valid award of prospective relief. *Quern* at 347–49, 99 S.Ct. at 1148–50.

The type of relief sought by the plaintiff in this case, is clearly within the ambit allowed by the court in *Quern*. The plaintiff seeks only to notify class members of their right to re-apply for AFDC benefits without the restriction of a $1500.00 automobile equity limit. This relief is precisely the type of relief contemplated in *Quern*.

### 3. Factors Which the Secretary was Ordered to Consider In Lieu Of a Newly Promulgated Regulation

The defendant moves the court to reconsider that portion of the order which directs the Secretary to consider various relevant factors in determining eligibility for AFDC benefits. *see Brown, et al. v. Secretary, Health and Human Services*, 868 F.Supp. 405 (D.N.H.1993) (order on motion for clarification). The defendant argues that consideration of these factors supplants the Secretary's authority to fashion regulations. The defendant further contends that the consideration of regional factors unique to New Hampshire, such as the state's relative lack of public transportation, are not adaptable to a national standard. The defendant's arguments misconstrue the use of the factors which were ordered by this court.

Consideration of the various factors do not supplant the Secretary's authority to fashion regulations. On the contrary, the factors are only to be considered in evaluating AFDC applications in the event that the Secretary fails to enact a proper regulation. For that same reason, the factors do not need to conform to a national standard. The factors are only relevant to the class members who are comprised of AFDC applicants in the state of New Hampshire who have been denied benefits due to the automobile equity regulation. Thus, the factors need only be

considered in re-evaluating applicants in the state of New Hampshire.

Accordingly, the court denies the defendant's Motion to Alter or Amend the Judgment and further clarifies the order of July 23, 1993, holding that the automobile equity limitation is invalid as of that date.