In re **CROZIER BROS., INC., Debtor.**

**Bankruptcy No. 84 B 20231.**

United States Bankruptcy Court, S.D. New York.

Aug. 19, 1985.

Guazzo, Perelson, Rushfield & Guazzo, P.C., New York City, for debtor.

Reich and Reich, White Plains, for debtor.

David Kramer, New York City, for Local 445, Chauffeurs, Teamsters & Helpers, Westchester Co., New York, I.B.T.

## DECISION ON MOTION TO APPROVE REJECTION OF COLLECTIVE BARGAINING AGREEMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor in this case, Crozier Bros., Inc., seeks to reject a collective bargaining agreement pursuant to 11 U.S.C. § 365(a) of the Bankruptcy Code, which governs the assumption or rejection of executory contracts and unexpired leases. The debtor's Chapter 11 petition was filed on May 23, 1984, which predated the adoption of 11 U.S.C. § 1113 under the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98

Stat. 333. Accordingly, § 1113 expressly provides that § 1113 shall not apply to cases commenced prior to the date of its enactment, July 10, 1984. Therefore, the applicable standards to be applied are those prescribed by the United States Supreme Court in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

## FINDINGS OF FACT

1. The debtor, Crozier Brothers, Inc., filed with this court its petition for reorganization under Chapter 11 of the Bankruptcy Code on May 23, 1984. The debtor is engaged in the business of moving and storage and is located in White Plains, New York.

2. The debtor is a party to a collective bargaining agreement dated April 11, 1983, with the respondent union, Local Union No. 445, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (the "Union").

3. The only testimony in this case was offered by Robert Crozier, the debtor's general manager. His mother is the debtor's sole shareholder. Since 1979, the debtor has operated at a loss in every year to date. The ratio of labor costs (including payroll and contributions to benefit funds), to gross receipts for each year have risen from approximately 55% in 1979 to approximately 77% in 1983. In light of the fact that the debtor's business is labor-intensive, the progressive rise in labor costs is regarded by the debtor as onerous and burdensome.

4. The debtor's competitors in its area of operations include five companies with collective bargaining agreements with the Union and approximately twenty non-union companies. There was no evidence as to the financial condition of any of the debtor's competitors.

5. Apart from journeymen and trainees, the debtor employed eight Union members full-time in 1984. The debtor now employs four Union members full-time.

6. In order to effect economies, Mr. Crozier testified that he took a salary cut. He did not say what his salary was when he took the cut or what it is now. The debtor has tried to cut its sales costs and has terminated one salesman's position. Mr. Crozier's mother, who is incapacitated and is not involved in the debtor's operations, no longer receives any salary. The debtor has also attempted to cut its telephone advertising costs.

7. In February of 1984, the debtor attempted to negotiate a modification of the collective bargaining agreement with the Union. The Union requested certain financial information which the debtor submitted. A second negotiating session followed at the end of February of 1984 when the debtor again proposed changes in work rules, reductions in holiday and vacation schedules, and a modification of rates of compensation for various types of work. The Union did not respond favorably. On March 14, 1984, a third negotiating session took place at which time the debtor renewed its attempt to reduce its labor costs. The Union offered a counter-proposal which involved a reduction in the debtor's contributions to benefit funds. The Union refused to change any pay scales, hours worked, vacation time or the apprenticeship program. By letter dated March 16, 1985, the debtor offered to include a $2.00 per hour increase over the rates contained in the debtor's original proposal. The Union rejected this offer. By letter dated April 1, 1985, he debtor notified the Union that the collective bargaining agreement with the Union was terminated and that the debtor would request the Bankruptcy Court's approval of the debtor's rejection of the labor contract. Still another negotiating session took place on April 25, 1985, similarly without success.

## DISCUSSION

In *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) the United States Supreme Court ruled that a bankruptcy court should permit the rejection of a collective bargaining

agreement under 11 U.S.C. § 365(a) of the Bankruptcy Code if the debtor can show that the collective bargaining agreement burdens the estate, and that after careful scrutiny, the equities balance in favor of rejecting the labor contract. This standard is higher than the "business judgment" rule, but less stringent than that the reorganization will fail unless rejection is permitted. If reasonable efforts to negotiate a voluntary modification have been made and are not likely to produce a prompt and satisfactory solution, the court must balance the interests of the affected parties and it

> ... must consider the likelihood and consequences of liquidation for the debtor absent rejection, the reduced value of the creditors' claims that would follow from affirmance and the hardship that would impose on them, and the impact of rejection on the employees. In striking the balance, the Bankruptcy Court must consider not only the degree of hardship faced by each party, but also any qualitative differences between the types of hardship each must face.

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. at 1179, 79 L.Ed.2d at 496.

As in the case of *Fitzgerel v. I.B.E.W., Local Union No. 124*, 44 B.R. 628 (Bkrtcy. W.D.Mo.1984), the facts introduced into evidence are insufficient to enable the court to balance the equities in order to determine whether or not the collective bargaining contract should be rejected. It cannot be determined whether the hardship suffered by the debtor is attributable to the collective bargaining contract. There is no evidence as to the salary levels of the debtor's competitors nor is there any evidence as to the proportion of its labor costs to the gross receipts of the debtor's competitors. Moreover, there is no proof in the record that the debtor would be able to operate profitably if it could reduce its obligations to its four Union employees. Thus, based upon the paucity of evidence in this case, the court cannot determine that the collective bargaining agreement burdens the estate.

In balancing the equities, the court must be able to find that the rejection of the collective bargaining agreement will increase the probability that the debtor will be able to reorganize. *In re Briggs Transportation Co.*, 39 B.R. 343; 11 B.C.D. 1066 (Bkrtcy.D.Minn.1984). There was no evidence as to what the debtor's financial picture would look like if rejection were permitted or whether rejection would contribute to a successful reorganization. Manifestly, a reorganization in which the Union employees lost their health and pension benefits would not be in their best interests or considered by them as successful. *In re Pesce Baking Co., Inc.*, 43 B.R. 949 (Bkrtcy.N.D.Ohio 1984). Additionally, there is no evidence as to what the creditors might expect to realize if the collective bargaining contract were rejected. Therefore, in light of the absence of evidence necessary to satisfy the standards for rejection prescribed by the Supreme Court in *Bildisco*, the debtor's application for approval of the rejection of the collective bargaining contract with the Union must be denied.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The debtor has failed to sustain its burden of demonstrating that its collective bargaining contract with the Union should be rejected pursuant to 11 U.S.C. § 365(a).

3. The debtor's application for an order approving the rejection of its collective bargaining contract with the Union is denied.

SUBMIT ORDER on notice.