**In re CROZIER BROS., INC., Debtor.**

**Bankruptcy No. 84 B 20231.**

United States Bankruptcy Court, S.D. New York.

May 9, 1986.

Guazzo, Perelson, Rushfield & Guazzo, P.C., New York City, Reich and Reich, White Plains, N.Y. (Caesar C. Guazzo and Delia Guazzo, New York City, Lawrence R. Reich, White Plains, N.Y., of counsel), for debtor.

David Kramer, New York City, for Local 445, Chauffeurs, Teamsters & Helpers Westchester Co., New York, I.B.T.

## DECISION ON MOTION FOR A RE-HEARING OF MOTION TO AP-PROVE REJECTION OF COLLEC-TIVE BARGAINING AGREEMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor has moved to rehear or reconsider this court's decision of August 19, 1985 which denied rejection of its collective bargaining agreement with Local Union No. 445 International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (the "Union") as of April 1, 1985. *In re Crozier Bros., Inc.*, 52 B.R. 402 (Bankr.S.D.N.Y.1985).

The motion to rehear was made after the debtor filed its notice of appeal depriving the court of jurisdiction to hear it. The filing of a notice of appeal normally divests the lower court of jurisdiction to proceed with respect to the matters raised. *Bialac v. Harsh Investment Corporation (In re Bialac )*, 694 F.2d 625 (9th Cir.1982); *Crateo, Inc. v. Intermark, Inc. (In re Crateo, Inc.)*, 536 F.2d 862, 869 (9th Cir.1976), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); *In re Emergency Beacon Corp.*, 58 B.R. 399, 402 (Bankr.S.D.N.Y.1986); *First National Bank of Boston v. Overmyer (In re Overmyer )*, 53 B.R. 952, 954 (Bankr.S.D.N.Y.1985). On March 13,

1985 the District Court entered an order at the debtor's request permitting the debtor to apply to this court for a rehearing of its motion to reject the collective bargaining agreement.[1]

This court's previous decision holds that the debtor had failed to make a *prima facie* case for rejection of its collective bargaining agreement under the applicable standards of *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *see generally* 52 B.R. at 404 (discussion of applicable standards).

## DEBTOR'S EVIDENCE IN SUPPORT OF THE MOTION

At the hearing of the debtor's motion for a reconsideration of this court's prior decision, the debtor introduced testimony and exhibits in support of its motion. Three witnesses testified; Robert Crozier, the debtor's general manager, Neal Dorf, the debtor's accountant and Mr. Robert Drexler, the Union's business agent.

Mr. Crozier, who had testified at the first hearing, gave testimony as to events occurring prior to the first hearing and also as to actions that were undertaken as a response to the court's memorandum decision of August 19, 1985.

As to events antedating the first hearing, Mr. Crozier testified as follows:

(1) The actual number of full fledged Union members employed by the debtor was 3. The debtor also employed approximately 5 apprentices.

(2) He had taken a salary cut from $700 per week to $500 per week.

(3) Mr. Crozier testified for the first time that the debtor had unilaterally rejected the Union contract as of April 1, 1985 and had since then been compensating its employees in accordance with its last offer to the Union.

---

1. The order which was apparently filed in District Court on March 13, 1986 has never been presented for filing in this court.

(4) The debtor had not paid pension and welfare benefits on behalf of its employees for work performed after April 1, 1985.

(5) The debtor's last offer to the Union included a "grandfather clause" which provided that long-time employees would be paid their present hourly salary but their pension and welfare payments and vacation and holiday time would be cut in accordance with the debtor's final offer.

(6) Newly hired employees would be paid an additional $2.25 per hour more than the debtor had originally offered to the Union.

(7) Various economies had been undertaken by the debtor including a reduction in the number of vehicles during the debtor's slow season.

(8) Money would be saved by the rejection of the contract.

(9) Except for a period in the beginning of this case the debtor had made a profit each year since filing the petition.

(10) Some competitors had higher rates of pay and some had lower rates than the debtor.

(11) Some competitors with higher rates of pay and some with lower rates had outbid the debtor for moving jobs and *vice versa.*

As to events postdating the trial and decision, Mr. Crozier testified as follows:

(1) The debtor's advertising budget had been cut by reducing the size of advertisements in the yellow pages of the telephone book.

(2) He had spoken to some people at certain competing moving companies and was informed as to their hourly rates of pay. Some competitors paid higher rates and others paid lower rates.

(3) The debtor has filed a plan of reorganization.

Mr. Dorf, the debtor's C.P.A., testified as to the financial history of the debtor since the petition, using figures taken from the financial statements which the debtor had been filing with the court. He testified that the debtor's labor and union costs varied between 55% to 78% of the debtor's total gross sales between 1979 and 1985 as follows:

1979 ............. 55%
1980 ............. 67 1/2%
1981 ............. 65.4%
1982 ............. 72%
1983 ............. 78%
1984 ............. 68%
1985 ............. 60%

Mr. Dorf also testified that the debtor's labor and union costs amounted to between 30% and 44% of the debtor's percentage of total income between 1979 and 1985 as follows:

1979 ............. 32%
1980 ............. 33.7%
1981 ............. 34 1/2%
1982 ............. 37.1%
1983 ............. 44.1%
1984 ............. 38.9%
1985 ............. 30.2%

Mr. Dorf further testified that the debtor's annual profit and loss figures for the years 1979 through 1985 would have been different if pension and welfare contributions made under the Union contract had not been required. The figures with pension and welfare payments included and, those excluding pension and welfare payments were as follows:

| | With pension and welfare | Without pension and welfare |
|---|---|---|
| 1979 | $ 3,823 profit | $12,000 profit |
| 1980 | 3,013 loss | 16,000 profit |
| 1981 | 27,600 loss | 19,000 loss |
| 1982 | 6,000 loss | 500 profit |
| 1983 | 20,200 loss | 9,000 profit |
| 1984 | 13,400 loss | 10,000 profit |
| 1985 | 656 profit | 4,700 profit |

Mr. Robert Drexler, the Union's representative was called by the debtor as an adverse witness for the purpose of testifying as to the negotiations between the debtor and the Union, both prior to the April 1, 1985 rejection and thereafter. He also testified as to the rates of pay of various other competitors of the debtor as recited in Union contracts which were subpoenaed from the Union for this hearing.

The exhibits introduced into evidence were as follows:

(1) The contract for which approval of the rejection was sought.

(2) A booklet containing wage rates for the moving industry in the metropolitan area.

(3) The 1985 Yellow Pages for Westchester County, New York (to identify competitors of the debtor).

(4) Union contracts between Local 445 and several competitors of the debtor for the time period in question.

(5) The financial statements filed with this court since the inception of the case.

(6) Several pieces of correspondence between debtor or debtor's counsel and the Union regarding the negotiations surrounding the Union contracts rejection.

There was no testimony as to the effect of rejection on the debtor's employees other than Mr. Drexler's testimony that they just couldn't live on that amount of pay.

There was no testimony as to specific plans for hiring more employees at the lower rates of pay or as to any pension planned by the debtor if it received approval of its rejection other than a vague statement that the debtor could hire more people.

There was no testimony to the effect that reorganization would fail if rejection were not permitted.

## DISCUSSION

The motion papers do not state the applicable rules under which the debtor moves for a rehearing. The debtor asserted at the close of the hearing of the motion that it had moved pursuant to Fed.R.Civ.P. 59 (which is made applicable in bankruptcy pursuant to Bankruptcy Rule 9023). The debtor's counsel did not brief the point.

■ A motion to rehear or reconsider will be construed as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e). *See, National City Bank of Cleveland v. 6 & 40 Investment Group, Inc., (In re 6 & 40 Investment Group, Inc.),* 752 F.2d 515 (10th Cir.1985); *Bestron Corporation v. Eagle Comtronics, Inc.,* 720 F.2d 1019 (9th Cir.1983) (motion to reconsider made pursuant to local rules); *Brown v. Wright,* 588 F.2d 708, 710 (9th Cir.1978) (*per curiam*); *Gainey v. Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express and Station Employees,* 303 F.2d 716, 178 (3d Cir.1962); *Hansen v. Finn, (In re Curry and Sorensen, Inc.),* 57 B.R. 824, 827 (Bankr. 9th Cir. 1986).

■ Fed.R.Civ.P. 59(e) has a narrow reach whose purpose is that of granting to the court jurisdiction to rectify its *own* mistakes in the 10 day period following the entry of judgment. *White v. New Hampshire Department of Employment Services,* 455 U.S. 445, 450, 102 S.Ct. 1162, 1165, 71 L.Ed.2d 325, 330 (1982). Because the debtor also requested permission to supplement the record and, in light of the court's holding that the debtor had failed to establish a *prima facie* case, the motion will also be treated as a request under Fed.R. Civ.P. 52(b) for an amendment of the court's findings of fact. *U.S. Gypsum Co. v. Schiavo Brothers, Inc.,* 668 F.2d 172, 180 (3d Cir.1981), *cert. denied* 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982); 6A J. Moore, J. Lucas, Moore's Federal Practice ¶¶ 59.04[6] and 59.12.[12] (1985 ed.).

The relevant portions of Fed.R.Civ.P. 59 read as follows:

**(a) Grounds**

A new trial may be granted to all or any of the parties and on all or part of the issues.... (2) in an action tried without a jury, for any of the reasons for which rehearings have herefore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

\*    \*    \*    \*    \*    \*

**(e) Motion to alter or amend a judgment**

A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

In law and at equity the three most common grounds to amend a judgment, and the only ones relevant here are; for manifest error of law or of fact, or for newly discovered evidence. *Brown v. Wright,* 588 F.2d 708 at 710; *Evans, Inc. v. Tiffany & Co.,* 416 Supp. 224, 244, (N.D.Ill. 1976); 6A J. Moore, J. Lucas, Moore's Federal Practice ¶ 59.07 (1985 ed.).

A motion based on manifest error of law or fact will not be granted except on a showing of some substantial reason. The burden is on the movant to demonstrate these manifest errors. *Hager v. Paul Revere Life Insurance Company,* 489 F.Supp. 317, 321 (E.D.Tenn.1977) *aff'd without opinion* 615 F.2d 1360 (6th Cir. 1980); *Solar Laboratories v. Cincinnati Advertising Products Co.,* 34 F.Supp. 783 (S.D.Ohio 1940), *appeal dismissed* 116 F.2d 497 (6th Cir.1940) (not to be granted unless the court manifestly misapprehended the law or the facts).

The debtor has not attempted to demonstrate any manifest misapprehension of law by the court nor has the debtor pointed to any manifest misapprehension of the facts by the court. It is also reasonable to conclude that where the movant has failed to establish a *prima facie* case the first time there would be few significant facts in the record to misapprehend.

Newly discovered evidence as contemplated by Fed.R.Civ.P. 59 and Fed. R.Civ.P. 60 is evidence which was in existence at the time of trial of which the moving party was excusably ignorant. *Washington Mobilization Committee v. Jefferson,* 617 F.2d 848, 849 n.3 (D.C.Cir.1980); *Campbell v. American Foreign S.S. Corporation,* 116 F.2d 926, 928 (2d Cir.1941), *cert. denied* 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941); *Strobl v. New York Mercantile Exchange,* 590 F.Supp. 875, 878 (S.D.N.Y.1984) *aff'd* 768 F.2d 22, 24 (2d Cir.1985) (adopting the opinion of the district court) *cert. denied sub nom. Simplot v. Strobl,* —— U.S. —— 106 S.Ct. 527, 88 L.Ed.2d 459 (1985); 6A J. Moore, J. Lucas, Moore's Federal Practice ¶ 59.08[3] (1985 ed.). The movant has the burden of pleading and proving that the evidence is newly discovered and, that it had not been discovered despite the moving parties diligent efforts to ferret it out prior to the trial. *U.S. v. Potamkin Cadillac Corporation,* 697 F.2d 491 (2d Cir.1983) *cert. denied,* 462 U.S. 1141, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983).

The grant or denial of such a motion is within the discretion of the court and is only reviewable for abuse of discretion. *id.* As Mr. Chief Justice Taft stated long ago, motions for rehearing and motions for a new trial are:

addressed to the sound discretion of the court; and based . . . ., upon the ground of newly discovered evidence, the indispensable condition of their being granted [is] that the failure to discover the evidence in time for trial was not due to a lack of diligence on the part of the applicant.

*Toledo Scale Company v. Computing Scale Company,* 261 U.S. 399, 420–421, 43 S.Ct. 458, 463, 67 L.Ed. 719 (1923).

The evidence must not only have been "newly discovered" but it must be of such a nature that it would probably affect the original result. *Philip v. Mayer, Rothkopf Industries, Inc.,* 635 F.2d 1056, 1063 (2d Cir.1980); *Washington Mobilization Committee v. Jefferson,* 617 F.2d at 850; *Adams v. James,* 526 F.Supp. 80, 86 (M.D. Ala.1981); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2808 (1985) ed.).

The "newly discovered" evidence submitted on the hearing of this motion consisted largely of the testimony of Mr. Robert Crozier, the general manager of the debtor, who testified regarding facts in existence both prior to and after the first hearing. There was no reason given why Mr. Crozier who had testified at the first hearing could not have testified as to the additional facts in existence at that time. *See Hammonton Investment and Mort-*

*gage Co. Morco, Ltd.,* 452 F.2d 119, 122 (7th Cir.1971); *U.S. v. Certain Interests in Property in Monterey County,* 186 F.Supp. 167, 172 (N.D.Cal.1960), *aff'd,* 308 F.2d 595 (9th Cir.1962) (where witness present but not called as a matter of trial tactics). Moreover, if information about competitors' salaries was needed there was no reason why such information could not be obtained pursuant to a subpoena at the first hearing. Indeed, no competitor was subpoenaed for the motion for a rehearing.

Similarly, the Westchester Yellow Pages were also introduced into evidence. There is no remotely conceivable reason for their not being available for the first hearing. In addition, the debtor's monthly financial statements, which were in this court's files at the time of the hearing, the debtor's Union contract, the letters between the debtor and the Union and the various other Union contracts with the debtor's competitors were all in existence and available for the first hearing and cannot be regarded as "newly discovered."

■ A booklet containing rates charged by the debtor's competitors was also introduced. A compendium of information discovered after the trial which contains facts which themselves are easily discoverable before trial is not "newly discovered" evidence. *See e.g. Jay Edwards, Inc. v. New England Toyota Distributors, Inc.,* 708 F.2d 814, 824–825 (1st Cir.1983), *cert. denied,* 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983) (a computer sheet containing summaries of inventory and sales was not newly discovered evidence since the information was otherwise obtainable from other sources at the first trial).

■ No reason was given as to why Mr. Drexler, the Union's business manager had not been asked to testify previously in light of the fact that he was present in court during the first hearing. Nor was it shown why Mr. Dorf could not have testified earlier as to the contents and preparation of monthly financial statements that he had prepared. Having failed once to make out a *prima facie* case the debtor may not relitigate old matters or present its case under a different theory and get yet another bite at the apple. Counsel argues that this court can reopen the record and alter its judgment at any time it chooses. The spirit of "if at first you don't succeed try try again" is not part of the Federal Rules and is contrary to the concepts of *res judicata* and the finality of judgments.

The authority for amending a court's findings or for making additional findings is contained in Fed.R.Civ.P. 52(b), which reads as follows:

> **(b) Amendment.** Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

A motion to amend findings or to make additional findings is intended to enable an appellate court to obtain a correct understanding of the facts determined by the trial court which resulted in the trial court's conclusions of law and its judgment. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2582 (1985 ed.).

> A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and a conclusion of law.

*Id.* at p. 722.

■ As stated by Judge Levet in *Zeeman v. United States,* 275 F.Supp., 235 at 255 (S.D.N.Y.1967) *modified on other grounds and aff'd* 395 F.2d 861 (2d Cir. 1968):

> In any event, the plaintiff's motion under Rule 52(b) was for additional findings of fact and conclusions of law. This rule

"... is not intended as a vehicle, for securing a rehearing on the merits." *Heikkila v. Barber*, 164 F.Supp. 587, 592 (N.D.Cal.1958); *Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc.*, 188 F.Supp. 248, 254 (N.D. Ill.1960).

Fed.R.Civ.P. 52(b) will not support the debtor's motion for amending this court's previous findings or for making additional findings. The additional findings are intended to change the result of the earlier decision which holds that the debtor had not presented sufficient evidence to justify its rejection of the collective bargaining agreement with the Union.

In its brief in support of the motion, the debtor's counsel do not even refer to Fed. R.Civ.P. 52(b). Instead, counsel for the debtor state that the bankruptcy court can modify or vacate its orders, or decrees or judgments so long as no intervening rights have become vested in reliance thereon. As stated by the Second Circuit Court of Appeals in *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 757–758 (2d Cir.1981), this concept relates to the bankruptcy court's authority to revoke or vacate an earlier order "subsequently deemed improper." An improper order based on mistake, inadvertence, surprise, excusable neglect, fraud or other misconduct may now be corrected under Fed.R.Civ.P. 60, which applies to bankruptcy cases pursuant to Bankruptcy Rule 9024. The debtor's counsel state in their brief that Fed.R.Civ.P. 60(b) is inapplicable in bankruptcy proceedings. This point is simply an incorrect statement of law. As expressed by the Second Circuit Court of Appeals in *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d at 758:

> The amenability of a final order to modification by the bankruptcy court itself, however, is governed by Bankruptcy Rule 924 [now 9024], which incorporates Fed.R.Civ.P. 60.

(footnote omitted). Nonetheless, Fed.R. Civ.P. 60 does not authorize a relitigation on the merits unless one of the enumerated grounds for relief under Rule 60 is established. Clause (6) of Fed.R.Civ.P. 60(b) provides, that in addition to the enumerated grounds, relief may be granted for "any other reason justifying relief from the operation of the judgment: ...." As stated in *Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d at 759:

> This portion of Rule 60(b) is properly invoked when there are extraordinary circumstances ... or where the judgment may work an extreme and undue hardship....

(citations omitted).

The debtor has not demonstrated what extraordinary circumstances or extreme and undue hardship factors exist which would justify a relitigation on the merits of this previously decided matter. Indeed, the debtor eschews the applicability of Fed.R. Civ.P. 60(b) to the facts in this case.

### CONCLUSIONS OF LAW

The debtor's motion to rehear or amend this court's previous decision so as to obtain an order approving the debtor's rejection of the collective bargaining agreement is denied.

SETTLE ORDER on notice.