In re ST. STEPHEN'S 350 EAST 116TH ST., Debtor.

In re St. Stephen's 239 West 123 Street, Debtor.

In re St. Stephen's 352 East 116th Street, Inc., Debtor.

In re St. Stephen's 546 West 160 Street, Inc., Debtor.

In re St. Stephen's 51 West 126th St., Inc., Debtor.

In re St. Stephen's 22 East 126th Street, Inc., Debtor.

In re St. Stephen's 1989 Madison Ave., Inc. Debtor.

Nos. 03–42897 (RDD) to 03–42903(RDD).

United States Bankruptcy Court, S.D. New York.

Aug. 5, 2004.

Zavatsky, Mendelsohn, Gross, Savino & Levy, LLP, by Allan B. Mendelsohn, Syosset, NY, for M & T Mortgage Corp.

Frank J. Hancock, pro se.

## MEMORANDUM DECISION AND ORDER GRANTING M & T'S MOTION FOR SANCTIONS AND DENYING FRANK J. HANCOCK'S MOTION FOR AN ORDER (A) VACATING SANCTIONS AND (B) COMPELLING TURNOVER OF SURPLUS PROCEEDS

ROBERT D. DRAIN, Bankruptcy Judge.

By Order dated January 22, 2004, this Court granted the motion (the "Dismissal

Motion") of M & T Mortgage Corporation ("M & T"), which the United States Trustee joined, to dismiss these seven chapter 11 cases for cause, with prejudice, under section 1112(b) of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*[1]

Although many, if not all, of the factors supporting dismissal of these cases with prejudice also supported M & T's related request for sanctions in the form of attorney's fees, I denied that request without prejudice, subject to M & T's right to make a further submission in support of sanctions on notice to the above-captioned debtors (the "Debtors") and their counsel of record, Frank J. Hancock. M & T did so by Supplemental Affirmation in Support of Request for Award of Costs, Sanctions and Counsel Fees Pursuant to 28 U.S.C. § 1927, dated January 23, 2004, and Second Supplemental Affirmation in Support of Motion Pursuant to 28 U.S.C. § 1927, dated February 9, 2004 (together, the "Sanction Motion").

I conducted a hearing on the Sanction Motion on March 10, 2004, at which Mr. Hancock appeared for the first time in these chapter 11 cases and acknowledged—indeed, offered as an excuse—his nearly total lack of involvement on behalf of the Debtors, including his failure to supervise the conduct of the cases by non-lawyers.

Having reviewed the Sanction Motion and the responses in opposition by Mr. Hancock and his paralegal and/or friend Burton Pugach, as well as M & T's reply, and having considered Mr. Hancock's representations on the record at the March 10 hearing, I ruled from the bench that a sanction should be imposed on Mr. Hancock, the amount of which to be determined after M & T filed and served an affidavit with its counsel's time records

detailing the services for which M & T sought reimbursement.

M & T filed that information on April 5, 2004, but it was not complete until a supplemental submission filed on April 23, 2004. Neither Mr. Hancock nor the Debtors responded to these submissions; however, Mr. Hancock filed an Affirmation in Support of Motion to Vacate Sanctions and to Order Pay Over of Surplus Moneys, dated April 28, 2004 ("Motion to Vacate"), in which he sought, among other things, relief under Fed.R.Civ.P. 60(b), incorporated by Bankruptcy Rule 9024. The Motion to Vacate was based on the allegation that a building owned by one of the former Debtors had sold at foreclosure for a surplus over the amount of M & T's claim secured by the building.

For the reasons stated at the March 10 hearing, as supplemented hereby, M & T's Sanction Motion is granted and a monetary sanction is imposed in the amount set forth herein. The Motion to Vacate is denied.

### Background

The Debtors filed their chapter 11 cases on December 12, 2003. On December 17, 2003 M & T moved in the alternative for dismissal of the cases for cause under section 1112(b) the Bankruptcy Code and for relief from the automatic stay under sections 362(d)(1) and (2) of the Bankruptcy Code to permit M & T to proceed with the execution sales of the real properties (the "Properties") subject to its judgment liens, which had been scheduled to occur shortly before the filing of the chapter 11 petitions.

M & T's Dismissal Motion asserted that (1) the original obligors, St. Stephens Bible College Realty Management Corp. and St.

---

**1.** M & T also sustained its alternative request for relief from the automatic stay under sec-

tions 363(d)(1) and (d)(2) of the Bankruptcy Code.

Stephen's Community Development Corp., had secretly transferred the Properties to the Debtors, one per Debtor, shortly before the commencement of the chapter 11 cases for no consideration with the exception of each Debtor's assumption of the particular judgment debt to M & T secured by the Property that it received, (2) the Debtors had no other assets, no other debts, no operations and no income, (3) the Debtors had not paid, and were incapable of paying from their own funds, taxes, water, sewer and other obligations, which had resulted, and would continue to result, in the imposition of liens on the Properties, and (4) rather than using chapter 11 to reorganize, which they were incapable of doing, the Debtors simply were delaying and frustrating M & T's efforts to enforce its judgments.

The Debtors filed an objection to the Dismissal Motion at the last minute, on the basis, as stated in Mr. Hancock's January 2, 2004 Affirmation, that the loans to the original obligors were fraudulently incurred and *ultra vires*. M & T responded that these defenses already had been decided on the merits in M & T's favor in the state court litigation in which M & T had obtained its judgments, which, in fact, proved to be the case.

However, M & T was not able to respond to the Debtors' objection at the originally scheduled, January 6, 2004 hearing on the Dismissal Motion. Instead, Mr. Pugach, who described himself as a paralegal working for Mr. Hancock, appeared on behalf of the Debtors to request an adjournment. (It was subsequently confirmed to the Court that Mr. Pugach, a felon, has been removed from the roll of attorneys admitted to practice in New York.) Mr. Pugach said he was seeking an adjournment because Mr. Hancock, the Debtors' attorney of record, was otherwise engaged in the District Court for the Southern District of New York.

■ The Debtors had not previously requested M & T's consent to an adjournment, and M & T's counsel had come prepared to argue the motion, although, of course, like the Court, he had not expected to be handed Mr. Hancock's Affirmation setting forth the Debtors' convoluted objections immediately before the hearing. Nevertheless, the Court adjourned the hearing to January 8, 2004 at 2:00 p.m., a date and time that Mr. Pugach stated Mr. Hancock would be available. I asked, however, that Mr. Hancock provide Chambers with copies of his request for the order to show cause and the order to show cause itself in the matter in which he was reported to be engaged in the District Court, which Mr. Hancock has never submitted.[2]

Mr. Pugach thereafter informed Chambers that Mr. Hancock was, contrary to his earlier representation, also unavailable on January 8. M & T nevertheless consented to another adjournment of the hearing on its Dismissal Motion to January 14, 2004.

On January 14, 2004 Mr. Hancock again failed to appear. Instead, Michael Blanchard, accompanied by Mr. Pugach, ap-

**2.** Section 362(e) of the Bankruptcy Code requires that motions for relief from the automatic stay be ruled on promptly. Moreover, the facts alleged by the Dismissal Motion described "new debtor syndrome," *see, e.g., Calif. Mortgage Serv. v. Yukon Ent., Inc. (In re Yukon Ent., Inc.)*, 39 B.R. 919, 921 (Bankr. C.D.Cal.1984), raising the concern that the Debtors were using the Bankruptcy Code im-

properly. *Id.* Thus, although this Court has denied motions to dismiss chapter 11 cases evincing many of the same facts, *see, e.g., In re 68 West 127 St., LLC*, 285 B.R. 838 (Bankr. S.D.N.Y.2002), such allegations required heightened scrutiny of attempts to delay the hearing on the Dismissal Motion, such as last-minute requests for adjournments.

peared for the Debtor in opposition to the Dismissal Motion. Like Mr. Pugach, Mr. Blanchard is not a lawyer. He is in the real estate business, although he is not a licensed real estate broker. He also described himself as a "paralegal." *See* January 14, 2004 Hearing Transcript (hereafter "Tr.") at 63.

On January 14, 2004 Mr. Blanchard informed the Court that Mr. Hancock had resigned as counsel for the Debtor, apparently, according to Mr. Blanchard, out of pique that the Court had asked him to corroborate the circumstances leading him to direct Mr. Pugach to request an adjournment on January 6. Tr. at 20, 36.[3] The Court informed Mr. Blanchard and Mr. Pugach, who, notwithstanding having described himself only as Mr. Hancock's paralegal, also sought to represent the Debtors at the hearing, that Mr. Hancock had not properly sought leave to resign as attorney of record pursuant to Local Bankruptcy Rule 2090-1(e). Mr. Hancock's absence was not a basis for further adjourning the hearing.

The Court then ruled that neither Mr. Blanchard nor Mr. Pugach could represent the Debtors, because, as corporations, the Debtors had to be represented by a lawyer admitted to practice before the Court. *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir.1983); *Bijan–Sara Corp. v. FDIC (In re Bijan–Sara Corp.)*, 203 B.R. 358 (2d Cir. BAP 1996).[4] However, M & T and the U.S. Trustee agreed that Mr. Blanchard could testify as a witness for the Debtor, subject to cross-examination, which Mr. Blanchard was happy to do. Tr. at 20–21, 34–35.

Based primarily on Mr. Blanchard's testimony, which generally was credible, I found that the Properties were, as M & T had alleged, the Debtors' sole assets and produced no income (Tr. at 23, 45–46); that the Debtors had no ongoing business (Tr. at 45–46); that the Debtors had no creditors with the exception of M & T and statutory lienors (Tr. at 55–56) and no shareholders, directors officers or employees with the exception of Mr. Blanchard (Tr. at 48); that shortly before the bankruptcy filings the former owners of the Properties, M & T's mortgagors and judgment debtors, assigned the Properties (one per Debtor) to the Debtors, each of which had been formed for the purpose of receiving the Properties, for no consideration with the exception of the assumption of the judgment debt to M & T secured by the Property transferred to it (Tr. at 47–48, 68–69); and that Mr. Blanchard's interest in these chapter 11 cases was simply to delay M & T's foreclosure sale of the Properties while marketing the Properties himself (Tr. at 55, 68–69), upon which sale, Mr. Blanchard testified, he would pay himself and perhaps others a fee or commission (Tr. at 72–73).

Mr. Blanchard also admitted that he believed that at best there was only "very marginal" value in the Properties in excess of the amount owed to M & T (Tr. at 72). The Debtors' Schedules of Assets and Lia-

---

**3.** It is worth noting that in a subsequently filed pleading in this matter Mr. Pugach stated that, whether or not Mr. Hancock was unavoidably occupied in District Court, the Debtors had always intended to seek an adjournment at the January 6 hearing.

**4.** Mr. Pugach relied on *Matter of Holliday's Tax Services, Inc.*, 417 F.Supp. 182 (E.D.N.Y. 1976), *aff'd without opinion* 614 F.2d 1287 (2d Cir.1979), when requesting to represent the Debtors. However, not only has that decision been described as an "aberrant case," *In re Bijan–Sara Corp.*, 203 B.R. at 359, *quoting Rowland v. California Men's Colony*, 506 U.S. 194, 203 n. 5, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993), but also, of course, permitting Mr. Pugach to represent the Debtors would have been antithetical to his disbarment.

bilities corroborated this valuation testimony. Tellingly, Mr. Blanchard could not describe who would receive any excess sale proceeds after the satisfaction of M & T's claims, other liens and his fee or commission. If there were any excess proceeds, he did not expect to keep them, notwithstanding that he was the Debtors' sole shareholder. He also stated that he had no agreement with M & T's judgment debtors to remit excess proceeds to them, except, perhaps, up to $10,000 under an unwritten understanding (Tr. at 72–74). These cases, therefore, very clearly were two-party disputes in which even the Debtors' equity holder had no interest in the dispute, *as an equity holder*, but rather was acting in an ill-defined capacity as an unlicensed broker and managing agent for either an undisclosed or a nonexistent principal.

The Court also found that, notwithstanding Mr. Hancock's Affirmation in opposition to the Dismissal Motion, the Supreme Court of the State of New York had previously decided against the Debtors' assignors, and M & T's original obligors, with respect to the Debtors' various claims and defenses to M & T's mortgage debt raised in the Debtors' objection to the Dismissal Motion. *See* Memorandum Decision of Hon. Carol E. Huff dated August 1, 2001 in *M & T Mortgage Corp v. St. Stephen's Community Development Corp., et al.*, Index No. 111960/00, in which Justice Huff granted M & T's motion for summary judgment, as well as M & T's subsequent seven judgments entered by Justice Huff, which are final and *res judicata*. In addition, this Court found that the Debtors' contention that the decision and judgments of Justice Huff were obtained by fraud was conclusory and unsupported. (Tr. at 90–91).

Finally, the Court found that the Debtors had failed to seek to retain counsel, including Mr. Hancock, under sections 327 and 328 of the Bankruptcy Code; that the Debtors had employed brokers without Court approval; that the Debtors had failed to file operating reports or to keep separate books and records or debtor in possession checking accounts (Tr. at 42–44, 52–54) as required by the Bankruptcy Rules and U.S. Trustee guidelines; and that Mr. Blanchard had transferred funds to the Debtors from other entities, which he was managing, for no consideration and with little or no record-keeping, although, given that the Debtors had no income, it did not appear that he had yet been able to cause the Debtors to make similar transfers.

It was apparent from Mr. Blanchard's testimony that he had no understanding of the duties of a chapter 11 debtor. For example, he was apparently contemplating the sale of certain Properties without providing notice and the opportunity for a hearing to M & T as required under sections 363(b) and (f) of the Bankruptcy Code. (Tr. at 40). He did not appreciate the reporting obligations of a chapter 11 debtor or the need to resist commingling the Debtors' assets with others'. Nor did he seem to appreciate that the eve-of-foreclosure transfers (the only effect of which would be to frustrate M & T by muddying title) and the Debtors' vaguely articulated goals and severely limited resources for conducting the chapter 11 cases might be problematic. Clearly he lacked the advice of an attorney to inform him what the Debtors properly could and could not do under the Bankruptcy Code. Based on the foregoing, the Court granted the Dismissal Motion.

In the Dismissal Motion, M & T also had requested the imposition of unspecified sanctions under Fed. R. Bankr.P. 9011 and 28 U.S.C. § 1927 against unspecified parties. However, given the absence of Mr.

Hancock and the January 14 hearing's focus on M & T's request for dismissal of the cases and relief from the automatic stay, the Court directed that the hearing on M & T's request for sanctions and counsel fees be held only after further submissions by M & T on notice to Mr. Hancock.

M & T's Sanction Motion argued for an award of attorney's fees under 28 U.S.C. § 1927[5] on the basis that Mr. Hancock's involvement in the filing and pursuit of the Debtors' chapter 11 cases unreasonably and vexatiously multiplied the proceedings in connection with M & T's collection of its debts.[6] M & T argued that, as evidenced by the Court's dismissal order, these chapter 11 cases never should have occurred. According to M & T, Mr. Hancock was responsible for the fact that M & T arrived at where it should have been all along— enforcing its judgments in state court— only after incurring needless expense and delay. Mr. Hancock should be sanctioned, M & T argued, not only for signing the chapter 11 petitions but also for raising in his Affirmation in response to the Dismissal Motion defenses that already had been decided on the merits against the Debtors. Moreover, M & T pointed out that, after having set the chapter 11 cases in motion, Mr. Hancock then improperly deserted them, causing further delay, confusion and expense.

Undeterred by the Court's ruling that he was not authorized to represent the Debtors, Mr. Pugach weighed in on the sanctions issue one day after the January 14 hearing, before M & T filed its Sanction Motion. In a letter dated January 15, 2004, he explained that the adjournment of the January 6 hearing had been beyond Mr. Hancock's control; that, contrary to Mr. Blanchard's testimony of the previous day, Mr. Hancock had subsequently failed to appear on behalf of the Debtors not because Mr. Hancock chose no longer to represent the Debtors but, rather, in response to Mr. Pugach's "instruction that St. Stephens had elected to proceed *pro se;* " that no one had been harmed by Mr. Hancock's inattention, because Mr. Blanchard had been permitted to speak at the January 14 hearing; and that Mr. Hancock should not be sanctioned because, in the light of the Debtors' inability to collect rent, Mr. Hancock "never received a fee for these proceedings." Finally, Mr. Pugach argued that the real villain of the cases was M & T, because its debt was, contrary to the final orders in the state court litigation, fraudulently incurred.

Mr. Hancock then filed a letter himself, dated January 29, 2004, in response to the Sanction Motion in which he echoed certain of Mr. Pugach's themes. He reiterated Mr. Pugach's explanation for his

**5.** M & T did not continue to press its original request for sanctions under Bankruptcy Rule 9011, perhaps because not all of Mr. Hancock's allegedly sanctionable conduct involved his advocacy of positions before the Court but also included his inattention to the cases and lack of supervision of Messrs. Pugach and Blanchard. M & T could have relied on Rule 9011 for the imposition of sanctions for at least some of Mr. Hancock's conduct, such as his execution of the chapter 11 petitions, notwithstanding M & T's failure to give Mr. Hancock a warning to cease such activity; as noted by Chief Bankruptcy Judge Bernstein, "The 'safe harbor' provision in Bankruptcy Rule 9011(c)(1)(A) does not apply

if the bad faith relates to the filing of the petition since the filing has immediate, serious consequences and there is no absolute right to withdraw a chapter 7 or chapter 11 petition." *In re Intercorp Int'l., Ltd.,* 309 B.R. 686, 694 n. 10 (Bankr.S.D.N.Y.2004).

**6.** 28 U.S.C. § 1927 provides:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

absence on January 6 because of the requirements of the District Court.[7] He also repeated Mr. Pugach's argument that, notwithstanding the state court orders, M & T and its counsel had engaged in fraud in obtaining its mortgages and, therefore, should themselves be sanctioned. Mr. Hancock's letter went on to state that M & T's counsel had improperly tried to prejudice the Court against St. Stephens by referring to Mr. Pugach as a "disbarred attorney." According to Mr. Hancock this was a "highly unethical tactic," not because Mr. Pugach wasn't a disbarred attorney but because "Mr. Pugach is not the attorney for St. Stephens and did not even work on or file the Chapter 11 petitions." Mr. Hancock's letter also made two legal arguments. First, he stated that because all of the activity in the Debtors' cases stemmed from M & T's Dismissal Motion, there was no multiplication of proceedings under 28 U.S.C. § 1927. In addition, Mr. Hancock stated that he could not be sanctioned because he had been given no opportunity to withdraw the purportedly offending pleading—that is, the chapter 11 petitions. Finally, because of all of the alleged misconduct of M & T and the alleged infirmity of M & T's legal position, Mr. Hancock threatened to seek sanctions from M & T.

Before the hearing on the Sanction Motion, Mr. Hancock filed another response, this time in the proper form of an objection rather than a letter, in which he again explained his absence on January 6[8] and again argued that, notwithstanding the state court's prior orders, M & T's secured debt was fraudulently incurred and, therefore, the Debtors' chapter 11 cases were filed in good faith.[9] Mr. Hancock also stated, remarkably even for these cases, that, contrary to Mr. Blanchard's testimony, he did not appear at the January 14 hearing because "Mr. Pugach discharged me, telling me that there was nothing any lawyer could do, if discovery is not permitted in this case."[10]

At the hearing on the Sanctions Motion, Mr. Hancock, representing himself, took yet another approach. Mr. Hancock represented to the Court that, contrary to his statement in his January 29 letter that Mr. Pugach had not been involved in preparing the chapter 11 filings and, indeed, had been opposed to them, it was really Mr. Hancock who had no role in the chapter 11 filings and the subsequent cases. He stated now that he had only lent his name to the chapter 11 petitions, which he had scarcely read, if he had read them at all, only as a favor to his friend, Mr. Pugach. Apparently he had also lent his name to his Affirmation in opposition to the Dis-

7. Both Mr. Pugach and Mr. Hancock strenuously asserted that they were not to blame for Mr. Hancock's inability to appear at the January 6 hearing. They failed to recognize, however, that this was the least of Mr. Hancock's problems, and that the Court's response in granting Mr. Pugach's request for an adjournment clearly did not justify Mr. Hancock's subsequent disappearance from the case.

8. In both his earlier letter and in this objection, Mr. Hancock mistakenly referred to the date of the first hearing as January 8.

9. Shortly thereafter the Debtors, purportedly *pro se,* filed a "Cross Motion" to the Sanction Motion, seeking to vacate the Dismissal Order under Fed.R.Civ.P. 60(b) alleging newly discovered evidence of M & T's alleged fraud. The Court denied this motion on the same day that it ruled from the bench on the Sanction Motion, finding that the purportedly newly discovered evidence was neither new nor material to the Dismissal Order.

10. There had been no request for, let alone a denial of a request for, discovery when Mr. Hancock was purportedly relieved of representing the Debtors by his paralegal Mr. Pugach.

missal Motion on the same basis. Given the limited nature of his involvement, for which he had not been paid, Mr. Hancock argued that he should not be subjected to sanctions.

As noted above, the Court concluded differently.[11] However, I also held that M & T had yet to establish its reasonable costs and expenses incurred because of Mr. Hancock's conduct—that is, the cost of undoing the damage caused by Mr. Hancock's affirmative actions and his inattentive or nonexistent supervision of Messrs. Pugach and Blanchard.[12] M & T subsequently filed and served an affidavit of its counsel with time and expense records supporting the requested fees and expenses, and subsequently supplemented that information with an affidavit setting forth its counsel's hourly rates. Thereafter, Mr. Hancock filed his Motion to Vacate.

*Discussion*

## A. Sanctions under 28 U.S.C. § 1927

■ Bankruptcy Rule 9011, 28 U.S.C. § 1927 and the Court's inherent power under section 105 of the Bankruptcy Code each permit the imposition of sanctions, on appropriate notice—which existed here— for certain types of wrongful conduct, including the bad faith filing of a bankruptcy petition and the bad faith prosecution of a bankruptcy case. *In re Intercorp Intern.*, 309 B.R. at 692. *See also In re Spectee*

*Group, Inc.*, 185 B.R. 146, 158 (Bankr. S.D.N.Y.1995) (awarding sanctions against debtor's counsel under Bankruptcy Rule 9011, 28 U.S.C. § 1927 and 11 U.S.C. § 105 in connection with bad faith filing and conduct of chapter 11 cases).

■ As Chief Judge Bernstein noted in *Intercorp*, although courts have been reluctant to adopt a *per se* rule that a bad faith filing determination requires the imposition of sanctions, 309 B.R. at 692 (citations omitted), such reluctance is open to question at least in the Second Circuit, where "the courts have frequently applied the same standards to dismissal/conversion motions and sanctions motions based on bad faith." *Id.* at 692–93, citing *In re Cohoes Indust. Terminal, Inc.*, 931 F.2d 222, 227–28 (2d Cir.1991), and *C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997). The only real difference appears to be in the standard of proof: a motion to dismiss under section 1112(b) of the Bankruptcy Code requires a showing of cause by a preponderance of the evidence, whereas evidence of sanctionable conduct must be "clear" or "substantial." *Intercorp Intern.*, 309 B.R. at 693. *See also Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986) (a clear showing of bad faith is required under 28 U.S.C. § 1927, which may be inferred when the attorney's actions are so completely without merit as to require the conclusion that they were un-

---

**11.** Mr. Hancock's only legal arguments, stated in his January 29 letter, verged on the frivolous. M & T's Dismissal Motion was filed in response to the bad faith commencement of the chapter 11 cases; therefore, Mr. Hancock, not M & T was responsible for vexatiously multiplying the proceedings. And, as noted above, there is no "safe harbor" exception to a sanction motion based on the wrongful commencement of a chapter 11 case. *In re Intercorp Intern. Ltd.*, 309 B.R. at 694 n. 10; further, M & T was excused from any other applicable safe harbor requirement

by Mr. Hancock's decision to absent himself from the rest of the case.

**12.** M & T also had sought consequential damages as sanctions, such as the possible drop in the value of the Properties during the interval of the chapter 11 cases and the cost of re-noticing foreclosure sales, but, as discussed below, consequential damages are not obtainable under the rubric of a motion for sanctions, being more properly the subject of a tort action.

dertaken for an improper purpose, such as delay). This difference also may reflect the courts' concern that bankruptcy filings, which often contain elements of bad faith filings without actually being in bad faith,[13] not be unduly chilled.

█ In any event, the same factors that led to the dismissal of these cases also clearly support the imposition of sanctions, even on the higher standard. Indeed, the actions and inaction of Mr. Hancock were particularly telling factors in persuading the Court that there was never any reasonable likelihood that these Debtors intended to reorganize and that there was no reasonable probability that they ever would successfully emerge from chapter 11. *See In re Cohoes Indus. Terminal,* 931 F.2d at 227; *In re Intercorp Intern.,* 309 B.R. at 694; *In re 68 West 127 Street,* 285 B.R. at 846–47; *In re Spectee Group,* 185 B.R. at 155–56 (stating criteria for bad faith filing). Mr. Hancock's only actions as counsel were to sign the chapter 11 petitions and to sign his Affirmation in opposition to the Dismissal Motion. A proper review of the petitions and only a cursory examination of Mr. Blanchard would have revealed, however, that the Debtors lacked the assets, ownership structure and fundamental business purpose to reorganize; that is, Mr. Hancock should have seen that he did not really have a client, but, rather, that he was furthering the interests of Mr. Blanchard as a real estate professional, not a shareholder, over the interests of M & T to get its debts paid. Moreover, Mr. Hancock's Affirmation merely attempted to relitigate issues that already had been decided in M & T's favor on the merits in the state court, which is sanctionable in a bad faith filing context. *In re Cohoes Indus. Terminal,* 931 F.2d at 230–31; *In re Intercorp Intern.,* 309 B.R. at 695.

█ As significant as Mr. Hancock's affirmative actions, however, was his lack of attention to these cases. The Second Circuit has articulated the reasons for requiring that corporations appear by licensed counsel:

> [T]he conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.,* to avoid litigating unfounded or vexatious claims.

*Jones v. Niagara Frontier Transp. Auth.,* 722 F.2d at 22. Those reasons are particularly applicable to a chapter 11 debtor, which has special statutory obligations and fiduciary duties to creditors, as well as to shareholders, that frequently—as here—require the active involvement of counsel. An attorney for a chapter 11 debtor cannot simply close his or her eyes to matters having an adverse legal and practical consequence for the estate and creditors. *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of America (In re JLM, Inc.),* 210 B.R. 19, 25 (2d Cir. BAP 1997). Instead, "The debtor's attorney, while not a trustee, nevertheless is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law." *Id.* at 26. Yet, giving Mr. Hancock the full benefit of the doubt, by his own admission he let Messrs. Blanchard and Pugach conduct these cases unsupervised. *See also In re Dunnagan,* 2001 Bankr.LEXIS 1804 (Bankr.D.Idaho January 22, 2001) ("By definition, a legal assis-

---

**13.** *See, e.g., In re West 127 Street,* 285 B.R. at 844–45.

tant is not a lawyer and is not authorized nor qualified to render advice and counsel the client, or to exercise the kind of judgment required in protecting Debtor's legal rights during the bankruptcy process."). These Debtors therefore consistently failed to meet their statutory and fiduciary obligations and improperly pursued their chapter 11 cases to M & T's detriment.

## B. The Amount of Sanctions

■ 28 U.S.C. § 1927 provides that an attorney may be required to satisfy "the excess costs, expenses and attorneys' fees reasonably incurred" because of his or her unreasonable and vexatious multiplication of proceedings.

> The same standards of compensation and reimbursement apply whether sanctions are awarded under Fed.R.Civ.P. 11 (and hence under Fed. R. Bankr.P. 9011), 28 U.S.C. § 1927 or the Court's inherent power. The injured party can recover those attorney's fees incurred attributable to investigating, researching and fighting the debtor's meritless petition as well as the fees incurred to research, prepare and prosecute its sanction motion. The party seeking the sanction must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary.

*In re Spectee Group*, 185 B.R. at 160, internal quotations and citations omitted. A separate tort action, not a sanction motion, is the proper vehicle, however, for recovering consequential, or "business" damages, such as lost property value or the cost of re-noticing a foreclosure sale. *Creek Ventures LLC. v. World Parts, LLC*, 2004 WL 1166642, 2004 U.S. Dist. LEXIS 9808 (W.D.N.Y. April 5, 2004); *In re Spectee Group*, 185 B.R. at 162–63. The amount of sanctions to be awarded is committed to the Court's discretion. *Id.* at 159.

■ M & T has submitted its counsel's time records indicating fees of $9,782.50 for 55.90 hours billed at $175.00 per hour (which is half of counsel's normal billing rate), and expenses of $1,836.50 for filing fees and transcripts. Upon review of the time records it appears, however, that approximately 10 hours were spent on ministerial work that probably would have been required even if these bankruptcy cases had not been filed. The remaining time entries, however, clearly are for work performed to undo the mess caused by the Debtors' filing and subsequent misadventures in chapter 11 or in support of the Sanction Motion. This time was reasonable and necessary, particularly given that M & T has requested reimbursement at only one-half of its counsel's normal hourly rates. Therefore M & T is awarded a sanction against Mr. Hancock in the amount of $9,869, consisting of $8,032.50 of counsel fees and $1,836.50 of expenses.

## C. Motion to Vacate

Fed.R.Civ.P. 60(b) is a remedy of equitable origin giving a court the discretion to rescind or amend a final judgment, *In re Chipwich, Inc.*, 64 B.R. 670, 675 (Bankr. S.D.N.Y.1986), citing 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure (1986 ed.) §§ 2851 and 2857, based on, among other things, newly discovered evidence and fraud or misrepresentation in procuring the order.

It is unclear what the Motion to Vacate seeks to vacate: an order granting the Sanction Motion, which was not entered when the Motion to Vacate was filed, or the order dismissing the chapter 11 cases. However, in the light of all of the expense and delay already incurred in these cases,

there is no good reason not to deem the Motion to Vacate timely, and the Court therefore applies Rule 60(b) to both "orders."

The Court is also left to speculate on the particular basis under Rule 60(b) upon which Mr. Hancock seeks relief, because the Motion to Vacate states only that one of the Properties has sold at foreclosure for more than M & T's secured debt and the expenses of sale. The Court assumes, however, that this fact is claimed to give rise to relief under either Rule 60(b)(2) (newly discovered evidence) or Rule 60(b)(3) (fraud or misrepresentation).

### 1. *Newly Discovered Evidence.*

■ Newly discovered evidence under Fed.R.Civ.P. 60(b)(2) is evidence that was in existence at the time of trial of which the moving party was excusably ignorant and that would likely produce a different result. *In re Chipwich*, 64 B.R. at 675, citing *Equal Employment Opportunity Commission v. The Rath Packing Company*, 787 F.2d 318, 331 (8th Cir.1986); *Bradley Bank v. Hartford Accident and Indemnity Company*, 737 F.2d 657, 662 (7th Cir.1984); *Philip v. Mayer Rothkopf Industries, Inc.*, 635 F.2d 1056, 1063 (2d Cir.1980); *Washington Mobilization Committee v. Jefferson*, 617 F.2d 848, 850 (D.C.Cir.1980); *Knight v. Hersh*, 313 F.2d 879, 880 (D.C.Cir.1963); *In re Seisay*, 61 B.R. 940, 14 B.C.D. 648, 651 (Bankr. S.D.N.Y.1986); *In re Crozier Brothers, Inc.*, 60 B.R. 683, 688 (Bankr.S.D.N.Y. 1986); 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2808 (1986 ed.).

■ The movant has the burden of pleading and proving (a) that the evidence was not discovered notwithstanding the movant's diligent efforts to ferret it out before trial and (b) that it would have changed the result. *In re Chipwich*, 64 B.R. at 676, citing *U.S. v. Potamkin Cadillac Corporation*, 697 F.2d 491, (2d Cir. 1983), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379; *Music Research, Inc. v. Vanguard Recording Society, Inc.*, 547 F.2d 192, 196 (2d Cir.1976); *In re Crozier Brothers, Inc.*, 60 B.R. at 688.

■ Mr. Hancock has not carried his burden. First, the issue of the value of the Properties was dealt with at the hearing, and the Debtors had the opportunity to introduce evidence then with respect to the Properties' value as of that date (which was far more relevant that the result in a subsequent foreclosure sale); indeed, Mr. Blanchard acknowledged that the Debtor had at that time only "very marginal" equity in the Properties (Tr. at 72), and the Debtors' own verified schedules, filed with their chapter 11 petitions, also supported M & T's position on valuation. Moreover, the fact that one of the Properties has sold at foreclosure for a surplus would not have produced a different result with respect to either the Dismissal Motion or the Sanction Motion, which focused primarily on the issue of bad faith and the Debtors' inability to conduct a chapter 11 case. The lack of meaningful equity value was only one of many factors supporting the Court's conclusion that the Debtors had filed and were pursuing their cases in bad faith. More significant was the Debtors' lack of a plan to realize value in the Properties that did not pose undue risk to M & T and the Debtors' inability to articulate who would legitimately benefit from any such surplus.

### 2. *Fraud or Misrepresentation.*

■ A motion to vacate an order for fraud in its procurement pursuant to Fed.R.Civ.P. 60(b)(3) must be proved by clear and convincing evidence. *In re Chipwich*, 64 B.R. at 676, citing *Ginther v. O'Connell (In re Ginther)*, 791 F.2d 1151, 1153 (5th Cir.1986); *E.F. Hutton & Co.,*

*Inc. v. Berns,* 757 F.2d 215, 217 (8th Cir. 1985); *Simons v. Gorsuch,* 715 F.2d 1248, 1253 (7th Cir.1983); *Rozier v. Ford Motor Company,* 573 F.2d 1332, 1339 (5th Cir. 1978) (*en banc*); *Di Vito v. Fidelity and Deposit Company of Maryland,* 361 F.2d 936, 939 (7th Cir.1966); C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2860 (1986 ed.), 7 J. Moore and J. Lucas, Moore's Federal Practice 60.24[5] (2d ed.1985). This burden cannot be met by mere conclusory allegations of fraud without specificity as to time, dates, places and persons. *Id.,* citing *Jennings v. Hicklin,* 587 F.2d 946, 948 (8th Cir.1978) (*per curiam*); *Di Vito v. Fidelity and Company of Maryland,* 361 F.2d at 939.

> The burden of making such showing was upon the defendant, and conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud, much less to carry the burden of resolving that issue.

*Id. See also Parker v. Checker Taxi Company,* 238 F.2d 241, 244 (7th Cir.1956) (bare petition filed by movant's attorneys in a motion for new trial on basis of fraud does not meet burden of proof under Fed. R.Civ.P. 60(b)). Mr. Hancock also has the burden of showing that the alleged fraud as to the value of the Property was material to the outcome. *In re Chipwich,* 64 B.R. at 677.

The Properties' subsequent foreclosure price does not establish that M & T obtained the dismissal of the chapter 11 cases or the Court's ruling on sanctions by fraud or misrepresentation. As noted, Mr. Blanchard acknowledged that the value of the Properties was only marginally greater than M & T's secured claims, and M & T's assertions as to the Properties' value was

further corroborated by the Debtors' own verified schedules of assets and liabilities filed with the chapter 11 petitions signed by Mr. Hancock. In addition, the Debtors lacked any coherent plan to sell the Properties and dispose of their proceeds while providing M & T with adequate protection of its interests therein and showed no understanding of their duties and obligations as debtors in possession under the Bankruptcy Code—in large part because they were either improperly represented by Mr. Hancock or deserted by him. Thus Mr. Hancock clearly has not provided the kind of evidence necessary to establish that the Court's rulings were obtained by fraud or misrepresentation.

### 3. *Turnover Of Surplus*

In the light of the dismissal of these chapter 11 cases, this Court no longer retains jurisdiction over the assets of the Debtors' former estates, and thus Mr. Hancock's request for turnover of the surplus foreclosure proceeds to the former owner of the Property (whoever that rightfully is) under section 542 of the Bankruptcy Code is denied. That issue is properly left to the state court.

### *Conclusion*

For the foregoing reasons, M & T's Sanction Motion is granted and the Motion to Vacate is denied. Mr. Hancock shall forthwith pay M & T $9,869 as sanctions under 28 U.S.C. § 1927.

It is SO ORDERED.